No. 3305.—M. A. SOUTHWORTH v. CITY OF NEW ORLEANS.

The act of 1870, which makes the respective parishes defray the expenses of recording the abstracts of minors' mortgages, does not impair the obligations of a contract, and is not therefore void on that account.

The expenses of making and registering these abstracts are not debts of individuals, but they are charges imposed by law without the consent of the parties, and the General Assembly is competent to declare that such expenses shall be defrayed by the parishes.

The city of New Orleans being the parish of Orleans, comes technically under the act of 1870, which imposes these burdens on the respective parishes. The recorder is only entitled to charge for one registry of each abstract, although it may contain several mortgages, and not being required by law to give a certificate, he cannot charge for it.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J. Hornor & Benedict*, for plaintiff and appellant. *George S. Lacey*, City Attorney, for defendant and appellee.

This case was tried by a jury in the court below.

LUDELING, C. J. This is a suit to recover the value of services rendered in recording the abstracts of inventories of the property of minors, whose tutors had not been required by law to give bond.

This claim is resisted on the following grounds:

*First*—" By the act of 1869, the expense of recording ' the abstracts " provided for in that statute, was made chargeable to the minor, tutor, or other responsible person, and to the property of the minor; while, by the act of 1870, the fees for such services were required to be paid by the respective parishes in which such services were performed, thereby subjecting the parishes to the liability of discharging the debts of a third party, contracted under the act of 1869, and as a consequence, compelling the tax-payers of the parishes, through an assessment on their property, to pay a debt, which by the law in force at the time it was contracted, rested upon private individuals." This, it is contended, is unconstitutional, because it impairs the obligation of a contract. What contract? What obligation is impaired? Surely there never was any contract between the minors (for whose benefit the Legislature directed the abstracts to be recorded) and the record-

ers and clerks. The act of 1870 directed that the parishes should advance to the clerks and recorders the fees for doing the work imposed on them by law, and look to the property of the minors for reimbursement. We can see nothing in this which impairs the obligation of a contract. It is argued that the Legislature can not make parishes pay the expenses of making and registering these abstracts, because it would be making the parishes pay the debts of individuals. We do not consider the expenses aforesaid properly debts of individuals—they are charges imposed by law without the consent of the parties—and the General Assembly may require that such charges shall be defrayed by the parishes. All the officers of the State and parishes, whose compensations are not fixed by the Constitution, might be paid by salaries fixed by the General Assembly; and thus citizens, who had no litigation in the courts, would be made to contribute to pay the debts of other citizens who had, if they be debts. There is no force in the position.

*Second*—The next objection is that the city of New Orleans is not embraced by the act of 1870, which says the parishes shall pay. The city of New Orleans is the parish of Orleans. Acts of 1870, page 30, section 2.

*Third*—The defendant urges that the act of 1870 provides that the recorder shall charge the same fees as "for other similar services," and that for the registry of ordinary mortgages, $1 50 for each is allowed.

If the charge were made thus, the relator contends that his fees would be increased ten fold, as there were many mortgages included in many of the abstracts. This is an error. The law created a mortgage on the property of the tutor in favor of the minors, etc., and the law which required the registry of an abstract of the inventories only provided a mode to preserve the mortgage, and only one mortgage is thus recorded by registering the abstract of the inventory in each tutorship, etc. The law does not require the recorder of mortgages to give a certificate in the matter, and he cannot charge for it. We are of opinion that by the terms "similar services," the Legislature intended that they should charge the State as for recording mortgages.

There is manifest error in the verdict and judgment in favor of the defendant. The judge *a quo* admits this in refusing to grant a new trial, but he remarks that "the refusal of the motion will facilitate the final decision at once."

This court has often said that it is the duty of courts to grant new trials when justice requires it. 4 M. 512; 3 N. 101; 4 N. S. 132; 2 La. 306; 15 La. 226; 1 R. 192; 7 R. 56; 10 R. 57; 2 An. 625; 6 An. 753. And a new trial is the proper remedy for an improper verdict. 4 M. 83. *Non constat*, that an appeal would have been taken if the judg-

ment had been such as the judge *a quo* would have approved in this case. A new trial should have been granted in this case.

The evidence shows that 2577 "abstracts" were recorded by the recorder of mortgages; and we think under the law he is entitled to charge $1 50 for each one.

It is therefore ordered and adjudged that the verdict and judgment in this case be set aside, and that there be judgment in favor of the plaintiff against the defendant for three thousand eight hundred and sixty-five dollars and fifty cents, with legal interest from the first of April, 1870, till paid, and costs of suit.

---

WYLY, J:, *dissenting.* The plaintiff seeks under the statute of the ninth March, 1870, to compel the city of New Orleans to pay his cost bills for recording the abstracts of the inventory of the property of minors, required to be recorded prior to the first of January, 1870, by act of the eighth of March, 1869. I think the law of the ninth of March, 1870, is unconstitutional, in so far as it compels the parishes to pay the cost bills already due by the minors, for whose benefit the abstracts were recorded prior to the first of January, 1870.

At the time the statute in question was passed, the debts for recording were already due; they were the debts of private individuals; and debts which New Orleans had not contracted, and which in no wise enured to her benefit or advantage.

To compel the city to pay such debts, would be practically the taking of private property for private purposes. New Orleans is a judicial person, and its property is protected by the constitution like that of any other individual.

The State can not take private property for itself without indemnifying the owner thereof; it is not permitted to take it at all for private purposes. It cannot take the property of A to give to B. Why, because the disposition of property belongs to the owner. And the State must become the owner before it can exercise the right of disposition, which is the main element of perfect ownership. And how is the State to get the ownership of private property?

Alone by expropriating it for some public purpose, and in paying the owner its value. If New Orleans be compelled under the statute of 1870 to pay the debts already due the plaintiff by certain private persons for services inuring alone to their benefit, it will be divested of the ownership of its money, which is its private property, without its consent and without any consideration whatever. It will simply be despoiled of its property for the benefit of private individuals.

If the city can thus be held to pay the debts of the individuals named

in the act, why can it not be compelled to pay the debts of every other individual?

And if it can be compelled by the Legislature to pay the debts of everybody, its private property is no longer the pledge of its individual creditors; it becomes the pledge of the creditors of everybody. In effect its property ceases to be private property; the ownership virtually passes to the Legislature, because the latter can freely exercise the right of disposition over it.

And the city can scarcely be considered the owner of the money in its treasury if the Legislature can freely exercise the right of disposition over it. To take money from the treasury of New Orleans to give to the plaintiff because certain persons happen to owe him, is virtually an expropriation of the property of the city for the benefit of a private individual.

The principle involved in this case is one of great importance. On the solution thereof hangs the fate of the city so far as the right to possess property is concerned.

If the Legislature can take money *ad libitum* from the treasury of the city, it can take any other property it may see fit and bestow it on whom it may seem proper.

The city will thus cease to be the owner of property, because the ownership is reposed in the person solely invested with the right of disposition. In my dissenting opinion in the case of the State ex rel. Hernandez vs. the City of New Orleans, lately delivered, I had occasion to express my views very fully on this subject, to wit: The right of the Legislature to compel New Orleans to pay a debt never contracted by her, and which in no wise inured to her benefit or advantage.

I will not repeat the argument, nor cite the authorities upon which it was based, but will simply refer to it in support of the position I take in this case.

For the reasons given, I feel bound to dissent from the opinion of the majority of the court.

See Cooley on Constitutional Limitations, page 230; 10 Allen, 585; 13 Wis. 37; 37 Barb. 440.

HOWELL, J., concurs.