PROVOSTY, J.
The Constitution (article 88) provides that:
“The General Assembly shall make the necessary appropriation to provide suitable and commodious buildings for said court [the Supreme Court] and the records thereof, and for the care and maintenance of the State Library therein; and shall provide for the repair and alteration of the building now occupied by the court.”
A statute as old as the state itself makes it the duty of each and every parish of the state to provide “a good and sufficient courthouse.” Nearly every parish of the state, heeding this injunction, is. to-day adorned by a building to which the inhabitants may point-with parochial pride as their courthouse. But a different sentiment possesses the inhabitant of New Orleans, when, to the visiting stranger who inquires where the Supreme Court and the civil district courts sit, he shows on each side of the Cathedral the two old structures pleading for repairs. One of them is the old Cabildo, so intimately associated with the early history of the state, and the other, too, is venerable with age and crowned by many associations; so that the reflection naturally suggests itself in their *338 presence, why do not the state and city repair those ancient structures, and convert them into museums, and provide a suitable building for the courts?
In response to this suggestion, and in obedience to article 88 of the Constitution, and doubtless with a view also to the duty, imposed immemorially upon the parish of Orleans, but thus far virtually unheeded, to provide a good and sufficient courthouse, the Legislature of 1902 passed Act No. 79 of that year, embodying a scheme for the erection, by the joint efforts of the state and of the parish' of Orleans, of a magnificent courthouse that would be an ornament to the city of New Orleans and a credit to the parish of Orleans and to the state.
The present suit is an injunction of that scheme, on the ground that said Act No. 79, p. 106, Acts 1902, and Acts Nos. 96, 179, pp. 214, 369, Acts 1904, amending it, are unconstitutional. The plaintiffs bring the suit in their quality' of citizens and taxpayers of the city of New Orleans. All of them being lawyers the court has no doubt that their secret wish is that the suit be decided adversely to them. But this has not prevented them from pressing it vigorously. Doubtless their motive has been to bring to a test, and, if unfounded, put at rest, the rumors current in the community respecting the unconstitutionality of the legislative measures in question.
Said Act No. 79 creates a commission of five persons to have charge of the selection and acquisition of a site for the building, and of the construction, furnishing, and equipment thereof, and fixes the cost at $575,000. The sole qualification prescribed for the members of this commission is that they be citizens and taxpayers. Nothing is said as to residence. Two are to be appointed by the Governor, and three by the mayor of the city of New Orleans by and with the advice of the city council.
The commission is required to advertise for plans for “a building to accommodate the Supreme Oourt, its archives, the State Library, the Louisiana Law Library, and such state boards and officers as are now located in the city .of New Orleans, the Oourt of Appeal, the civil district court, and the First city court of the parish of Orleans, and other record offices of said parish. * * *”
The building is to be “ a courthouse for the parish of Orleans,” and the selection of its site is to be “subject to the approval of the mayor and city council of New Orleans,” and any proceedings instituted for the expropriation of the site are to be carried on “in the name and for the city of New Orleans.”
Of the $575,000, $200,000 is to be contributed by the state and $375,000 by the city of New Orleans. The $200,000 of the state is appropriated in the act in the following words:
“In consideration of a perpetual free use of the rooms to be. set apart for the Supreme Court, its archives, the State Library, and such state boards and offices as are now located in the city of New Orleans, and of the perpetual maintenance of these rooms by the city of New Orleans, the sum of two hundred thousand ($200,000.00) dollars shall be contributed by the state of Louisiana, which amount be and is hereby appropriated payable out of the surplus interest tax fund for the year 1901 and previous years, at such times and in such amounts as the commission may recommend and the Governor approve as follows:
“The State Auditor shall warrant for the same on the State Treasurer on written application of the commission, approved of by the Governor, in such sums as may be required for paying the premiums for plans and for the construction, furnishing', and equipment of said building. :|i :|: * »
The city is required to contribute the $375,-000, and elaborate provision is made for the manner in which the obligation shall be met.
In 1904 said act was amended by Act No. 96, p. 214, of that year in the following particulars:
The tenure of office of the commissioners is fixed at four years.
The plans to be advertised for are to be for “a building to accommodate the Supreme *339 Court, its judges, clerk, and archives, State Library, Louisiana Law Library, the Attorney General, with quarters adequate for his clerk or clerks, assistant or assistants, the Court of Ajppeal, its judges, clerk, and archives, civil district court, its judges, clerk, and archives, the civil sheriff of the parish of Orleans, the First city court of the parish of Orleans, its judges, clerks, constable, and archives, the offices of the recorder of mortgages and the register of conveyances in and for the parish of Orleans, and custodian of notarial records for the parish of Orleans.
On the subject of funds the amending act (Acts 1904, p. 214, No. 96) provides as follows;
“There shall be devoted to said purposes the amount of two hundred thousand dollars ($200,-000.00) already contributed and appropriated by the state of Louisiana, under the terms of Act 79 of 1902, in consideration of the perpetual free use of the rooms to be set apart for the Supreme Court, its judges, clerks and archives, the State Library and Attorney General, his clerk or clerks and assistant or assistants, and of the perpetual maintenance of these rooms by the city of New Orleans.
“The State Auditor shall warrant for the same on the State Treasurer, on written application of the commission, approved by the Governor, at such times and in such sums as may be required for paying the premiums for plans, for the acquisition of a site, and for the construction, furnishing and equipment of said building.
“Such other sums as may be contributed and appropriated by the General Assembly of the state of Louisiana for the considerations aforesaid.
“The remainder of the funds required for the expenses of said commission, for acquisition of the site of said court house and the construction, furnishing and equipment thereof, shall be provided for by the issue and sale of bonds of the city of New Orleans as hereinafore provided.”
Here follows elaborate provision for the issue of the bonds in question to the amount of $750,000. The whole matter is placed in the hands of the board of liquidation of the city debt. The city is required to set apart yearly “out of the reserve fund of the annual budgets of the city, commencing with the year 1905, and until said bonds shall have been paid in full, in principal and interest, an annual amount of $41,000,” to be paid over to the “board of liquidation of the city debt to be by it held and used in payment of interest and principal of the bonds.”
Payments for the construction, etc., of the building are to be made by the board of liquidation of the city debt upon certificates “approved by the president of the commission and the mayor of New Orleans.”
Said Act No. 96, p. 214, of 1904 was amended by Act No. 179, p. 369, of same year by the addition of the following provision :
“That in addition to the courts, libraries and officers to be accommodated in the courthouse building provided for by said Act 96, of 1904, there also shall be accommodated in said building such other state officers and boards as may be deemed proper and advisable by the Governor and as he may indicate by notice in writing to said commission on or before January 1, 1905.”
The commission thus provided for has been appointed, and has organized, and its work has progressed to the extent that it has acquired by purchase and by expropriation, and has cleared of all buildings, a prominent square in the heart of the city of New Orleans, and has advertised for the submission of plans for the building.
Several constitutional provisions -are said to be contravened;
First.
“Art. 45. No money shall be drawn from the treasury except in pursuance of specific appropriation made by law; nor shall any appropriation of money be made for a longer term than two years. A regular statement and account of receipts and expenditures of all public moneys shall be published every three months in such manner as shall be prescribed by law.”
The respect in which this article is said to be contravened is stated in the brief as follows:
“Section 6 of the statute provides for an appropriation of $200,000, ‘payable * * * at such times and in such amounts as the commission may recommend,’ etc. This, we submit, is an appropriation of an indefinite sum of money, so far as the period of two years is concerned, and is an appropriation which may *340 extend far beyond two years from 1902. Indeed, on the date of filing this brief the time limit of the power of appropriation had already been exhausted. If any other interpretation is placed upon this section of the statute as being in conflict with article 45 of the Constitution, that article can be evaded by the Legislature appropriating a sum to be drawn on during some indefinite future period, whenever the beneficiary of the appropriation and the Govern- or shall give their joint consent. It converts article 45 into a merely verbal prohibition, without any actual effect.”
We fail to see how or wherein the fact that this appropriation is to be expended and drawn out of the treasury only when occasion for doing so should arise makes it exceptional or peculiar. Every appropriation stands on precisely the same footing. Even the alimony of the different state institutions is appropriated in a lump sum, and is, or should be, drawn out of the treasury and spent only when the occasion arises. To say that these appropriations are unconstitutional, because not required to be drawn out and spent within the two years, is assuredly to put upon this article 45 a construction never dreamed of by its framers. In last analysis, the objection resolves itself into the proposition that every appropriation must be conditional upon the amount thereof being spent within two years. Suffice it to say that the Constitution does not so provide.
The court is not informed what the mischief sought to be remedied by this constitutional provision was. If the motive of its enactment was to keep the executive department of the government dependent upon the legislative for money, after the manner in which in England the government is dependent upon the Commons, then its purpose is not contravened in the present instance; no more having been appropriated than was absolutely necessary.
Second.
“Art. 48. The General Assembly shall not pass any local or special law on the following specified subjects; * * *
“Granting to any corporation, association or individual any special or exclusive right, privilege or immunity.”
“Art. 50. No local or special law shall be passed on any subject not enumerated in article 48 of this Constitution, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the General Assembly of such bill, and in the same manner provided by law for the advertisement of judicial sales. The evidence of such notice having been published, shall be exhibited in the General Assembly before such act shall be passed, and every act shall contain a recital that such notice has been given.”
We have thought best to consider these two articles together, as they are closely related. The objection made under them is twofold; First, that the acts are local and special, and that notice of the intention to apply for their enactment should have been, and was not published; second, that even if such notice had been published, still the acts would be null, because they “grant an exclusive privilege.”
It is not explained to us wherein these acts grant an exclusive privilege, and we have been unable to make the discovery for ourselves.
A law, however, providing for the construction of the courthouse of a parish, is a local law. This no one can doubt. Indeed, if the providing of a courthouse for the parish were not a local matter, it would be hard to conceive what part of a parish’s business could be considered local. But it is said that the state is to have a share and part in this courthouse, and that this feature rescues the law from localism. It does not. The law continues to be one for the providing of a courthouse for the parish of Orleans, and as such a local law, as to the enactment of which the people of New Orleans had the right, under the Constitution, to be notified and to be heard. The matter will appear in a clearer light if we substitute one of the other parishes to that of Orleans, say the parish of Jefferson. Would any one doubt that a law compelling *341 the parish of Jefferson to build a courthouse or a jail was a local law, even though it provided that the state should have and pay for the use of some room space in the building? Such a law has a dual aspect, and in one of them it is purely local, and as such amenable to article 50. It is precisely this local aspect of the law which saves it from running foul of article 224, also invoked against it, by which the state cannot take the tax funds of one of the municipalities of the state for state purxioses. In so far as the private funds of the corporation of New Orleans are to be used for the erection of this building for the parish of Orleans, this law is essentially local in character; and that feature inheres in the law, no matter what may be added to it, and entitles the people of New Orleans to notice and to hearing on its enactment.
Third.
“Art. 58. The funds, credit, property or things of value of the state, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, association or corporation, public or private; nor shall the state, or any political corporation, purchase or subscribe to the capital stock oj any corporation or association whatever, or for any private enterprise. Nor shall the state, nor any political corporation thereof, assume the liabilities of any political, municipal, parochial, ■ private or other corporation or association whatsoever; nor shall the state undertake to carry on the business of any such corporation or association, or become a part owner therein, provided, the state, through the (general Assembly, shall have power to grant the right of way through its public lands to anj; railroad or canal; and, provided, police juries and municipal corporations may, in providing for destitute persons, utilize any chaxútable institutions within their corporate limits for the care, maintenance and asylum of such persons; and all appropriations made to such institutions for the purpose aforesaid shall be accounted for by them in the manner required of officials entrusted with public funds.”
It is said that, these acts grant to the commission created by them the funds and credit of the city of New Orleans. Also that the state is made a part owner of the building in question, and that this infringes that provision of the article forbidding the state from becoming “a part owner in the business of any political or municipal corporation.”
There is no granting of funds to anybody. There is a scheme for the construction of a building for the joint benefit of the state and the parish of Orleans, and each of the beneficiaries is made to bear its proportional part of the cost.
Whether the proportions are exactly observed, or not, is a matter of detail, upon which the judgment of the Legislature is presumably correct. In fact, it is not contended that they are not. There can be no doubt that the Legislature has desired to deal with the city of New Orleans in perfect fairness. So far as the commission is concerned, it is nothing more than an ephemeral body, part of the mechanism for the carrying out of this scheme. Obviously, it cannot be considered as a “person, association or corxioration” distinct from and independent of the state and the parish. Fisher v. Auditor, 39 La. Ann. 447, 1 South. 882.
True, the state is made part owner of the building, for to have the perpetual free use of thing is to be pro tanto its owner (Civ. Code, articles 490-492, 494, 626, 633, 637, 638); but to be part owner of a public building to be used exclusively for public purposes is not “to carry on a business or to become part owner thereof,” within the meaning of article 58. What the ai’ticle aims at is the propensity which the state manifested in the past to join in enterprises of a quasi private character, and even of a wholly private character, such as banking. The article was never intended to hamper the government of the state in the performance of public duties, such as the providing of accommodation for public functionaries. In conducting the ordinary business of the state, and availing itself to that end of the means in its judgment most suitable, the Legislature of Louisiana is as free and untram *342 meled as that of any other state; and no one would say that this providing of accommodation for the Supreme Court and the State Library and the other state functionaries In the city of New Orleans does not pertain to the ordinary business of the state.
Fourth.
Articles 224, 232 and 270 are said to be violated, in that taxing power, which under the Constitution can be exercised by the city of New Orleans alone,' is in these acts exercised by the Legislature, and, moreover, is so exercised in excess of the constitutional limit.
A sufficient answer is that it is not true that the Legislature has undertaken by these acts to exercise the power of taxation vested in the city of New Orleans, or to increase the rate of taxation. The taxes remain as heretofore. All that the Legislature does is to make more stringent and specific a duty which has rested immemorially upon the parish of Orleans, as upon all the parishes of the state, to provide a good and sufficient courthouse; a duty which the parish of Orleans may be said to have neglected. The limitations placed upon the powers of the Legislature by the Constitutions of 1879 and 1898 have not had the effect of absolving the parish from this duty, nor of debarring the Legislature from making it more imperative by appropriate legislation.
Fifth.
“Art. 319. The electors of the city of New •Orleans, and of any political corporation which may he established within the territory now or which may hereafter be embraced within the corporate limits of said city, shall have the right to choose the public officers who shall be charged with the exercise of the poiice power and with the administration of the affairs of •said corporation in whole or in part.
“Art. 320. This article shall not apply to the board of liquidation of the city debt, nor shall it be construed as prohibiting the establishment of boards of commissioners, the members of which are elected by the council or appointed by the mayor with the consent of the council. As to all other existing boards of commissioners affected by it, said article shall take effect from and after the first municipal election which shall be held in the city of New Orleans after the adoption of this Constitution; provided, that nothing herein contained shall be so construed as to prevent the Legislature from creating boards of commissioners, whose powers shall extend in and beyond the parish of Orleans, or as affecting present boards of that character, or the board of directors of the public schools; provided, that hereafter, in creating any board with such powers, or in filling vacancies therein, at least two-thirds of the members thereof shall be from the city of New Orleans, and elected by the people or council thereof, or appointed by the mayor as hereinabove provided.”
The contention under these articles is that' to construct a courthouse, which it is the duty of the city of New Orleans to build and for which the greater part of the city of New Orleans is to pay, is to administer in part the affairs of the city of New Orleans, and that therefore the commissioners should be chosen by the electors, or by the city council, or appointed by the mayor, of the city of New Orleans. Again, that even if it can be said that this commission is a board “whose power extends beyond the parish of Orleans,” still its composition is obnoxious to these articles, because only three out of the five members are appointed by the mayor, and three is not two-thirds of five.
These objections appear to us to be unsurmountable. The obvious, plain, and recognized purpose of article 319 is to secure to the inhabitants of the territory comprised within the corporate limits of the city of New Orleans, as existing at the date of the adoption of the Constitution, the administration of their own affairs; that the Legislature shall not have the right to choose the officers charged with such administration in whole or in part; and it is equally plain that the construction of a courthouse for a parish, at the expense of the parish, is the administration in part of the business of the parish. Jackson Square Com. Case, 112 La. 957, 36 South. 817; State ex rel. Saunders v. Kohnke, 109 La. 838, 33 South. 793. It may be well *343 to add, for information, that the city of New Orleans and the parish of Orleans are coterminous, and in respect to local administration are one and the same. Southworth v. City, 24 La. Ann. 313.
Our conclusion is that the several statutes assailed in this case would he constitutional and valid if, as local laws, they had been preceded by the publication of the notice required by the Constitution, and if the members of the commission were required to be chosen by the electors, or by the city council, or to be appointed by the mayor, of the city of New Orleans, but that, failing in these respects, they are unconstitutional, null, and void.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there be judgment decreeing Act No. 79, p. 106, of 1902, and Acts 96 and 179, pp. 214 and 369, of 1904, amendatory thereof, to be unconstitutional, null, and void, and that an injunction issue as prayed.
See dissenting opinion of BREAUX, C. J„ 39 South. 797.