JOBE v. CALDWELL.

Opinion delivered April 17, 1911.

1. STATE—VALIDITY OF APPROPRIATION FOR NEW CAPITOL.—The act of 1903, appropriating the sum of one million dollars for the purpose of completing the State Capitol, in so far as it undertook to appropriate money for that purpose for a longer period than two years, is in conflict with Const. 1874, art. 5, § 28, forbidding the Legislature to make appropriations for a longer period than two years. (Page 25.)

2. MANDAMUS—COMPELLING AUDITOR TO ACT.—Until the amount of claims against the State is adjusted and certified in the manner prescribed by the legislative branch of the government, the Auditor cannot be compelled by mandamus to issue a warrant, even if there be an appropriation. (Page 25.)

3. DEFINITION—APPROPRIATION.—An appropriation of funds by the Legislature is a setting apart from the public revenue of a certain sum of money for a specified object in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and for no other. (Page 25.)

4.  STATE—WHEN CLAIM PAYABLE.—Before a claim against the State will
    become due and payable out of the appropriations made for a certain
    fiscal period, it must mature and become payable during such period.
    (Page 26.)
5.  SAME—POWER OF AUDITOR TO ADJUST CLAIM.—Under act of April 20,
    1909, cancelling the contract with Caldwell & Drake for the erection
    of the State Capitol and naming an arbitration commission to settle
    the account of Caldwell & Drake with the State, *held* that the Auditor
    was not authorized to adjust such account, or to draw a warrant in
    favor of Caldwell & Drake until their account with the State was ad-
    justed and certified as required by such act.  (Page 27.)

Appeal from Pulaski Circuit Court, Second Division; *F. Guy
Fulk,* Judge; reversed.

*Hal L. Norwood,* Attorney General, and *William H. Rector,*
Assistant, for appellant.

1.  This court has twice held that the act of 1903 appro-
priating $1,000,000 for the purpose of completing the State capi-
tol was not a continuing appropriation but was void after the
expiration of two years.  Art. 5, sec. 28, Const. 1874; 85 Ark.
171; 93 Ark. 513.  The law provides what disposition is to be
made of appropriations unexpended at the end of two years.  See
Kirby's Dig. § § 3416-17-18.  No appropriation is valid for a
longer period than two years, whether amounts claimed to be
due accrued within that period or afterwards.

2.  If it were a fact that the Legislature could make a con-
tinuing appropriation, or that warrants could be drawn upon an
appropriation at any time after two years, provided the amount
was earned during the two years, still the Auditor would not
have been allowed, under the circumstances of this case, to issue
a warrant to the appellees, because the Patterson act, being act
143 of the Acts of 1909, created a commission to settle the con-
troversy between the State and appellees.  See section 2 of the
act.  And, until some amount should be certified to the Auditor
by the Capitol Commission as being due to appellees, as provided
by the Oldham act, the Auditor was without authority to issue
a warrant on the Treasurer in their favor.  Act 238, Acts 1909,
§ 12; 93 Ark. 513.

*J. W. Blackwood,* for appellees.

1.  It was provided by the act of 1903, § 6, that not more
than 90 per cent. of the amount earned should be paid to the

contractors until the building was fully completed and accepted, when the 10 per cent. retained should be paid, with the final estimate, to the contractors, etc. This 10 per cent. having been *earned* by appellees and *retained* by the board of commissioners, became segregated from the funds in the treasury to the credit of the capitol fund, and became the property of the appellees, subject to the condition of completing the building. 73 Ark. 473; 79 Ark. 530.

2. When the State unconditionally cancelled the contract, and took from appellees the custody of the unfinished building and grounds, she destroyed the existence of the contract, and waived all of its terms that were subject to her control. See act April 20, 1909, § 1. The effect of this act was to make it impossible for appellees to erect the building and comply with the condition of the contract. They are therefore entitled to recover for the work performed by them in like manner as if they had fully completed the work of erecting the building and thereby fully performed the contract. 4 N. Y. 412. Appellees' prayer for relief is confined to the recovery of the 10 per cent. earned and retained. The ascertainment of the fact that this sum has been earned by appellees and retained in the treasury for their use involves a mere matter of an inspection of public records in the possession of the Auditor by the requirements of the statute. Act 1903, § 4 *et seq.* The allowance and dedication to the use of appellees are demonstrated by the allowance and payment of the 90 per cent. 109 Fed. 819; 103 Fed. 418; 102 U. S. 187; 68 Ark. 584.

3. By the act of April 20, 1909, abolishing the Board of State Capitol Commissioners, the State put it out of her power to require her agent and representative, said Board, to furnish appellees with the certificates required by sec. 6, Act 1903. 167 N. Y. 238; 22 Fed. 524; 91 U. S. 646; 153 U. S. 540; 61 N. Y. 173; 53 N. Y. 374; 78 N. Y. 216; 2 Sutherland on Damages (1884 ed.), 521-22; 71 N. Y. 558; 20 N. Y. 464. When the State enters into a contract with a private individual, she lays aside her sovereignty and treats with her commercial adversary as an equal; and in such case, although an action may not lie against the State for a breach of the contract, yet the rights and obligations of the parties must be adjusted by the courts upon the same

principles as if both parties were private persons.   71 N. Y. 549; 26 Wis. 302; 16 Wall. 203; 96 U. S. 432; 15 How. 308; 5 Ark. 598; 7 Wall. 229-250; 66 Tex. 701; 94 U. S. 214; 59 Mich. 300; 36 Wis. 439; 5 East 449; 49 Pac. 449.

4.   The limitation of art. 5, § 29, Const. 1874, is upon the accrual of liabilities to be paid out a certain appropriation for the period of two years.   No implication arises that the money should actually be paid out of the treasury within two years. 5 Neb. 278; 60 Neb. 494; 39 So. 792.

McCulloch, C. J.   Caldwell & Drake, formerly contractors for the construction of the new State Capitol building, instituted this action in the circuit court of Pulaski County against the Auditor of State, praying for a writ of mandamus commanding the latter to issue a warrant on the State treasury for the sum of $33,373.82, alleged to be due them on estimates of the architect for work done on the building prior to April 16, 1905.

The contract dated August 14, 1903, between the plaintiff, Caldwell & Drake, and the Board of Capitol Commissioners created by the statute authorizing the construction of the building, contained the following stipulation:

"Payments will be made monthly upon the estimate of the architect, less 10 per cent. retained from each estimate, said retained amounts to constitute the final payment, to be made within thirty days after the completion and acceptance of the work; provided that said contractors shall not be paid in any one year a greater sum than can be realized in such year under the provisions of the law under which said building is constructed.  The final payment shall be made within thirty days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued.   If, at any time, there shall be evidence of any claim, if established, the owner of said premises might become liable, and which is chargeable to the contractors, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify it against such claim."

It is alleged in the complaint that between the date of said contract and April 16, 1905, the plaintiffs furnished material and performed work to the amount of $333,730, according to the estimates of the architect and the allowances of the Capitol Com-

mission, and that warrants were drawn and paid for the sum of $299,457.18, being the amount earned according to said estimates, less the ten per cent. deducted and retained in accordance with the terms of the contract, until the completion of the building.

The complaint sets forth the act of the General Assembly of 1909 cancelling said contract with plaintiffs, and then proceeds as follows:

"In pursuance of this action of the General Assembly, the State of Arkansas took from plaintiffs the possession of said building and grounds, and the connection of plaintiffs therewith was in all respects terminated; that, the condition upon which said payments of 10 per cent. so earned by them and retained by the Commissioners having become impossible by the act of the State, the obligation to deliver said retained sum became absolute; that the act aforesaid, in addition to cancelling the contract with these plaintiffs, abolished the Board of State Capitol Commissioners. The cancellation of said contract having abrogated the condition upon which said sum so earned was retained, it became the duty of defendant Auditor to issue his warrant upon the Treasurer therefor in payment and delivery thereof to these petitioners; that a demand was duly made on said Auditor for the issuance of said warrant, and was by him refused.

"The plaintiffs represent that there is now in the State treasury, to the credit of the State Capitol Fund, and has been at all times since the said sums were so earned, and, under the authority of the contract aforesaid, retained a sum largely in excess of the amount belonging to plaintiffs, and for the delivery of which a warrant is now retained."

The Attorney General demurred to the complaint, and, the demurrer being overruled, the court entered judgment awarding the writ of mandamus as prayed.

The act of the General Assembly approved April 20, 1909, known as the Patterson Act, entitled "An Act to create a Commission to adjust the controversy between the State of Arkansas and Caldwell & Drake and for other purposes," and the act of May 12, 1909, known as the Oldham Act, entitled "An Act to provide for carrying forward the work of the new State Capitol, and making appropriation therefor, and for paying any sum

which may be found due the former contractors, and for the creation and appointment of a Capitol Commission and defining the duties, and for other purposes," are set forth in the opinion of this court in the case of *Jobe* v. *Caldwell,* 93 Ark. 503, and are hereby referred to for a more complete understanding of the question involved in the present case.

In addition to that, it should be stated that the act of the General Assembly of April 16, 1903, under which the contract with plaintiffs was executed, appropriated $1,000,000 for the purpose of constructing the Capitol building, and that no further appropriation for that purpose was made until the passage of the Oldham act in 1909.

The Auditor refused to issue a warrant, as in the former case referred to above, on the ground that no appropriation of funds had been made by the General Assembly for the payment thereof.

There are two questions of law bearing on the case which must be treated as settled by former decisions of this court.

First, that the appropriation of funds made by the General Assembly of 1903 for the construction of the Capitol building was not a continuing one, and did not extend further than over a period of two years. *Moore* v. *Alexander,* 85 Ark. 171; *Jobe* v. *Caldwell, supra.*

Second, that, "until the amount of claims be adjusted and certified in the manner prescribed by the legislative branch of government, the Auditor can not be compelled by mandamus to issue a warrant, even if there be an appropriation." *Jobe* v. *Caldwell, supra; Danley* v. *Whiteley,* 14 Ark. 687.

These propositions are conceded by learned counsel for appellees, but their effect is sought to be escaped by saying that the amounts involved in this case were earned by plaintiffs under the contract during the period covered by the appropriation made in 1903, that the amounts were certified by the Board of Capitol Commissioners during that period, and that the funds were retained in the State Treasury for the purpose of payment when they should become payable under the contract.

We are of the opinion that the position thus taken is untenable.

In our former opinion we defined an appropriation of funds by the Legislature to be "a setting apart from the public revenue

of a certain sum of money for a specified object in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and for no other."

In fixing the amount of an appropriation, the Legislature anticipates and makes an estimate of the amount of money to become due and payable by the State during the specified fiscal period, and sets that much aside for such use during that period. Payments out of the appropriation of amounts falling due after the expiration of that fiscal period are not anticipated and' included in the estimates, and can not therefore be paid, even if the unexhausted appropriation be sufficient for that purpose. If it be conceded that counsel are correct in their contention that an appropriation continues to be available, after the expiration of the fiscal period, for the payment of obligations incurred during that period, an obligation must mature and become payable during that period before payment can be demanded out of the appropriation. It is not sufficient that an obligation may arise out of dealings with the State, to mature during a later fiscal period. The debt must, as already stated, mature and become payable during the fiscal period before it can be held to come within the appropriations made for that period. In other words, a mere promise on the part of the State, within the lifetime of an appropriation, does not fall within the appropriation unless such promise matures within that period. ·It is not correct to say that an amount earned under contract with the State comes within an appropriation when the contract provides for payment after expiration of that fiscal period. It falls within the appropriation made for the fiscal period during which the obligation to pay matures, and not during which the immature obligation arose. There is nothing in the contract which requires the State to pay the retained percentage before the completion of the work. Those amounts were, according to the terms of the contract, reserved until final settlement between the contracting parties "within thirty days after the completion and acceptance of the work." They were retained, subject to final adjustment and settlement of all matters between the parties concerning the performance of the contract.

Now, the contention of plaintiffs, as stated in their complaint, is that the enactment of the statute cancelling the contract

and discharging the contractors matured the obligation to pay the retained percentage of earned amounts and rendered it forthwith due and payable. It is not contended, and cannot be successfully maintained, that those amounts ever became payable by the State at an earlier date. The obligation to pay did not mature, even according to plaintiff's contention, during a fiscal period for which an appropriation was made, therefore the Auditor cannot be compelled to draw a warrant when there is not an available appropriation of funds to meet it. Conceding that these amounts were earned during the lifetime of the appropriation of 1903, and became payable under the contract by virtue of the abrogation of the contract by the statute of 1909, this did not bring them within the appropriation. There must be an available appropriation for the period within which they become payable before the Auditor can be required to draw a warrant.

There is still another cogent reason why the Auditor cannot be compelled by mandamus to draw a warrant for these amounts, even if much that learned counsel for plaintiffs contend for in their argument be conceded. There has been no adjustment by any authorized officer, board or tribunal, of the State's accounts with plaintiffs, and no certificate made to the Auditor of the amounts due to plaintiffs, if anything. Until this be done, the Auditor cannot be compelled to draw a warrant, though the asserted claim be shown to be just. Whatever else may be said of the Patterson Act, it abrogated the contract with plaintiffs to the extent that the State refused to allow further performance, and it also amounted to an assertion that the condition of accounts between plaintiffs and the State called for an adjustment by some officer or tribunal before payment of any sum should be exacted or made. The act created a tribunal for that purpose, and left it optional with plaintiffs whether or not they would take advantage of the offer to have their accounts adjusted. It provided that Caldwell & Drake should file with the arbitration commissioners an agreement to accept the decision of that Commission "in full settlement and satisfaction of all their claims on account of their contract to erect the capitol building," and that said Commission should report "a just and equitable settlement of the whole matter, fixing the amount, if any, the State should pay Caldwell & Drake, and what amount, if any, Cald-

well & Drake should refund to the State if the Commission finds they have been paid more than was justly and fairly due them."

In passing on the question in the former opinion hereinbefore referred to, we used the language quoted in the outset, which is equally applicable to the present controversy.

Plaintiffs were not compelled to accept the terms of adjustment proposed in the Patterson Act, but their failure to accept did not clothe the Auditor or any other officer or tribunal with authority to adjust the accounts and certify the amount due plaintiffs. If the Patterson Act had never been passed, and if the plaintiffs had never been discharged from further performance of the contract, the Auditor would not have been authorized, until the accounts between plaintiffs and the State had been adjusted and the amount due plaintiffs on final settlement had been certified "within thirty days after the completion and acceptance of the work" by the Board of Capitol Commissioners, or some other tribunal created for that purpose by the Legislature, to draw warrants in favor of plaintiffs to cover the retained percentage which was, under the terms of the contract, held subject to final settlement at the completion and acceptance of the work. Therefore, when the Legislature discharged plaintiffs by the passage of the Patterson Act, the accounts with plaintiffs were unadjusted, and the Auditor was without authority either to make the adjustment or to draw a warrant until the adjustment and certificate of the amount due should be made by some officer or tribunal authorized by the Legislature so to do.

Since we hold, for the reasons herein stated, that the judgment of the circuit court awarding the writ of mandamus was erroneous, it is unnecessary to pass on the further contention of the Attorney General that the Auditor can not lawfully draw warrants on an appropriation after the end of the fiscal period for which the appropriation was made, even for a claim which matured during that period. His contention is based on sections 3416, 3417 and 3418, Kirby's Digest.

Reversed with directions to sustain the demurrer to the complaint.

HART, J., dissents.

WOOD, J., (concurring). I concur for the reason that according to the doctrine announced in the cases of *Moore* v. *Alex-*

*ander,* 85 Ark. 171, and *Jobe* v. *Caldwell,* 93 Ark. 503, no appropriation was made to pay petitioners. I did not agree to. the decision in *Jobe* v. *Caldwell, supra,* because I reached the conclusion that an appropriation had been made by the act of May 12, 1909, to pay Caldwell & Drake for the work they had performed toward the completion of the Capitol for the reasons stated in my dissenting opinion in that case. I there endeavored to show that, if there was no appropriation to pay Caldwell & Drake whatever might be due them, the "Patterson" and "Oldham" acts were unconstitutional and void. I still adhere to those views, but concede that under the rule there announced by the court the petition herein must be denied. I am of the opinion also that the facts of this case differentiate it from that, and that the petition herein would have to be denied, even though the case of *Jobe* v. *Caldwell* were overruled. For in that case the Capitol Commissioners had issued their certificate to the Auditor in favor of Caldwell & Drake for the amount claimed by them in that suit. The Capitol Commission was the duly authorized board or agency of the State for ascertaining and certifying, as the work progressed, the amount due the contractors, based on the estimates of the architect. Here there has been no such adjustment by any agency authorized to make it, and no certificate to the Auditor by such board or tribunal in favor of petitioners for the amount now claimed. In the absence of such adjustment and such certificate to the Auditor, he could not issue his warrant to pay any amount that might be due. He has no authority to make such adjustment himself. The contention is not sound that the adjustment was made when the old Board of Capitol Commissioners certified the ninety per cent. for payment, and that the discharge of Caldwell & Drake by the Patterson act *ipso facto* rendered the ten per cent. due and made the issuing of a certificate therefor to the Auditor unnecessary. The reasons why this contention can not be sustained are clearly stated in the opinion by the Chief Justice, and I concur in the views he has expressed. The ten per cent. was reserved as an additional guaranty that the contractors would do their work and complete the building according to contract. The discharge of Caldwell & Drake indicates that there was a controversy between them and the State as to whether they had complied with their con-

tract. So long as that was undetermined, the 10 per cent. could not be paid.

HART J., (dissenting). I believe that the act of 1903 setting apart and specifically appropriating the money to be derived from a particular source for the purpose of constructing the new State Capitol is available to pay the claim of Caldwell & Drake in this case. The act under which the contract between the State and Caldwell & Drake was made provides that "in no event shall said Board of State Capitol Commissioners ever pay to said contractors more than 90 per cent. of the amount earned until the building is fully completed and accepted, when the 10 per cent. retained shall be paid," etc. The amount earned during the two years next ensuing after the appropriation of 1903 was made definite and certain by the estimates of the architect and the certificate of the board for 90 per cent. of the amount thereof. Warrants for the 90 per cent. were issued and paid. It is plain that the amount of the 10 per cent. retained is equally fixed and certain. Under the contract, this amount was to be retained by the State until the building was completed. The board, under the power and directions given it by the Acts of 1909, took possession of the building and refused to allow Caldwell & Drake to proceed further in its construction. The act also provided that the contract between the State and Caldwell & Drake be cancelled, annulled and set aside. In the case of *Jobe* v. *Caldwell,* 93 Ark. 513, we, by express language, stated that we did not decide to what extent the cancellation of the Caldwell & Drake contract was valid, and only went to the extent of holding that the act of 1907 did not make an appropriation to pay Caldwell & Drake.

It is evident, however, that both the Oldham and Patterson acts passed in 1909, in so far as they provide that the contract between the State and Caldwell & Drake be annulled, cancelled and set aside, are unconstitutional. Under our Constitution a State may defeat the enforcement of its contract by the failure or refusal of its Legislature to make the necessary appropriation to meet it, but that body can not impair the obligation of the contract itself. It can not be said that a State is bound by the terms of its contract, and at the same time has the right to cancel, annul or set it aside. The mandate of the Constitution

that no law impairing the obligation of contracts shall ever be passed carries with it the rule that it abrogates the State's right to cancel, annul or set aside its own contracts. In short, the State had the power to terminate its contractual relations with Caldwell & Drake; but when it did so without recognizing their rights under the contract, they were entitled to what they had already earned under it, and might enforce that right, if an appropriation was available for that purpose.

Therefore, the State having taken possession of the building and having refused to allow Caldwell & Drake to proceed in its construction without recognizing their rights, under the contract, the latter became entitled to the 10 per cent retained.

It was contended by the Attorney General that "no appropriation is valid for a longer period than two years, regardless of whether amounts claimed to be due accrued within two years or afterwards." According to the majority opinion, the contentention is well taken, and the point is settled by our previous decision in the case of *Jobe* v. *Caldwell,* reported in 93 Ark. 513. I do not think so. In that case the board issued certificates for work done in 1907, and we held that the appropriation of 1903 was not available to pay them. Here the work was done within the time limit of the appropriation, and 10 per cent. of the amount so earned was retained by the State. The constitutional mandate is that "no appropriations shall be for a longer period than two years." I think the framers of the Constitution meant to limit the appropriation to the payment of such claims as might accrue during the ensuing two years, and did not intend to place a limit on the time the money should be drawn out of the treasury. In other words, an appropriation is the setting apart of a fund for a particular purpose, and that purpose is accomplished when the service is performed or money earned, and the time of payment was not intended to be limited.

In construing a similar provision of the Constitution of Nebraska, the Judges said: "This section simply means this: That provision for the support of the government by any one Legislature must be limited to two years. It does not require the money to be actually drawn from the treasury during that time, but the expense must be incurred or the salary earned

during the two years for which the appropriation was made."
To the same effect see *Benedict* v. *New Orleans,* (La.) 39 So. 792.

Under the views I have expressed, the claim required no
auditing to establish its amount, and the decision of the Auditor
that the claim was not allowable under the appropriation of 1903
is reviewable by mandamus. *Black* v. *Auditor,* 26 Ark. 237.