## HUDSON v. HIGGINS.

Opinion delivered November 28, 1927.

1. STATUTES—EXPENSE OF GOVERNMENT—MAJORITY REQUIRED.—Acts 1927, p. 502, authorizing the board of control of the Agricultural, Mechanical and Normal School for Negroes to purchase a site and erect a building for such school, *held* not invalid under Const., art. 5, § 31, because it did not receive two-thirds majority of both houses of the Legislature, as the maintenance of such school is a necessary expense of government.

2. STATES—SUFFICIENCY OF APPROPRIATION OF MONEY.—Acts 1927, p. 502, authorizing the purchase of a site for the Agricultural, Mechanical and Normal School for Negroes and the construction of a building for that purpose, in providing that the State's negotiable notes should be issued not to exceed in the aggregate the amount of $275,000, and that the money arising from the sale of said notes should be paid into the fund of such school and used for no other purpose than the erecting and equipping of buildings and for other permanent improvements thereat, *held* to make an appropriation of money to be raised by the sale of the notes, within the meaning of Const., art. 5, § 29, providing that money shall not be drawn from the treasury except in pursuance of specific appropriation.

Appeal from Pulaski Chancery Court; *Frank H. Dodge,* Chancellor; affirmed.

*Creed Caldwell,* for appellant.

*H. W. Applegate,* Attorney General, *John L. Carter,* Assistant, and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

Kirby, J. This appeal challenges the validity of act 146 of the Acts of the General Assembly of 1927, as not having been passed by the requisite majority of the Legislature, and the authority of the State Debt Board to issue the notes or bonds, because no specific appropriation of the money to be raised by the bond issue was made therein authorizing its use or expenditure.

Appellant, a taxpayer of Jefferson County, brought suit in the Pulaski Chancery Court for an injunction against the State Debt Board to prevent the issuance and sale of the notes or bonds provided for in said act. It was alleged that no appropriation of the money to be raised by the sale of the bonds had been made by the act; that therefore the money realized from the sale of the bonds, bearing 5 per cent. interest, would have to be kept in the treasury until an appropriation for the expenditure thereof could be made by the 1929 Legislature, at a loss of 2 per cent. interest, the difference between the 5 per cent. and the 3 per cent. paid for the State's funds by depositories; and that said act was invalid, not having received a two-thirds majority of the members of both houses of the General Assembly, as required under § 31, article 5, of the Constitution, the funds not being provided for defraying the necessary expenses of Government, nor for sustaining the common schools.

The Attorney General demurred to the complaint, and the demurrer was sustained, and, the plaintiff declining to plead further, judgment was rendered against him, from which this appeal is prosecuted.

It is contended, first, that the act is invalid because it did not receive in passing a two-thirds majority of both houses of the Legislature, as provided in § 31, article 5, of the Constitution, which reads: "No State tax shall be

allowed, or appropriation of money made, except to raise means for the payment of the just debts of the State, for defraying the necessary expenses of Government, to sustain common schools, to repel invasion and suppress insurrection, except by a majority of two-thirds of both houses of the General Assembly.''

The Normal School for Negroes at Pine Bluff was first authorized by the Acts of 1873, and operated as a branch of the State University. The Legislature in 1881 recognized the purchase of a site by the board of trustees of the State University, and made appropriation for a building thereon. In 1927, act 341 created a separate board of trustees for the management of this school, but provides that it shall be governed by the same laws, so far as applicable, as provided for the management of the University by its trustees.

The State having adopted this policy for the education of a part of its citizens, and established this school for that purpose, to be operated by its trustees and agents, its maintenance becomes and is a necessary expense of Government within the meaning of said constitutional provision. *Vincenheller* v. *Reagan,* 69 Ark. 460, 64 S. W. 278; *State v. Sloan,* 66 Ark. 575, 53 S. W. 47, 74 Am. St. Rep. 106.

It is next contended that no appropriation is made by the act of the money to be realized by the sale of the notes within the meaning of § 9, article 5, of the Constitution: ''No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents, and no appropriation shall be for a longer period than two years.''

In *Dickinson* v. *Clibourn,* 125 Ark. 101, 187 S. W. 909, the court, construing this provision of the Constitution, said: ''Appropriation denotes the setting apart or assigning to a particular use a certain sum of money for a specified purpose, in such a manner that the public officials

are authorized to draw and use the sum so set apart, and no more, for the purpose specified, and no other. *Clayton* v. *Berry,* 27 Ark. 129; *State* v. *Moore,* 50 Neb. 88, 69 N. W. 373, 61 Am. St. Rep. 538; *Stratton* v. *Green,* 45 Cal. 149.'' See also *Jobe* v. *Caldwell,* 93 Ark. 503, 125 S. W. 423; s. c., 99 Ark. 20, 136 S. W. 966.

The said act 146 authorizes the board of control of the Agricultural, Mechanical and Normal School for Negroes at Pine Bluff to relocate and build a school plant for the institution on lands now owned by it near Pine Bluff, and to acquire any such new property as may be deemed necessary to carry out the purposes of the act. Section 3 authorizes the State Debt Board to sell for cash the State's negotiable or promissory notes from time to time, not to exceed in the aggregate the amount of $275,000, to provide a fund for the purpose of erecting and equipping buildings and for other permanent improvements at said school. Section 4 requires the bonds to be issued in denominations of $1,000, payable serially, through a period of thirty years, and bearing 5 per cent. interest, payable semi-annually. Section 7 provides for the method of sale of the bonds, and that no sale shall be for less than par and accrued interest, or less than the highest bid previously received and rejected. Section 9 provides: ''The money arising from the sale of said notes shall be paid into 'the Agricultural, Mechanical and Normal School fund,' and used for no other purposes than the erecting and equipping of buildings, and for other permanent improvements at the Agricultural, Mechanical and Normal School.'' Section 11 appropriates out of the fund the sum of $25,000, or so much thereof as necessary, for the payment of expenses incident to the sale of the notes and for any such interest as may fall due in the biennial period ending June 30, 1929; provided, that the amount paid out under this appropriation shall be deducted from the appropriation made by the General Assembly of 1927 for the support and maintenance of the institution.

Since the maximum amount of money that can be realized from the sale of the bonds, under the provision of the statute, is definitely fixed by the whole amount of the bonds authorized issued, $275,000, which is all required to be put into the treasury for the "Agricultural, Mechanical and Normal School fund," and used for no other purposes than the erection and equipment of the buildings and other permanent improvements, as provided in § 9 of the act, the majority of the court is of opinion, in which the CHIEF JUSTICE, Justice MEHAFFY and the writer do not concur, that the act makes an appropriation of the money raised by the sale of the bonds within the meaning of the constitutional provision.

It follows that the court's action in holding the complaint insufficient, and sustaining the demurrer, was correct, and the decree is affirmed.