OVERTON, J.
 

 This is a suit for a mandamus to require defendant to honor a warrant for $25,000, drawn on him by the state auditor, and to credit the amount thereof to the account of the department of conservation, for the purpose of carrying out the provisions of Act 109 of 1926, relative to the construction of a fish hatchery, and the purchase of a site therefor, on Lake Bruen, in the parish of Tensas. The act directs the department of conservation to purchase the site, to build and equip the hatchery, and appropriates for that purpose, “out of the funds collected by the Conservation Commission, not otherwise appropriated,” the sum of $25,000, to carry out the provisions of the act.
 

 The defenses are, first, that two years having expired before the commissioner drew on the auditor, and before the auditor drew his warrant, defendant was without authority to pay the auditor’s warrant, and, secondly, that Act 109 of 1926, making the appropriation, was superseded or repealed by Act 69 of 1928, making another appropriation of a surplus of moneys from the conservation fund, not otherwise appropriated, for the purpose of establishing the Northwest Louisiana game and •fish preserve, and repealing all laws in conflict therewith.
 

 The case was tried on an agreed statement of facts. This statement shows, in substance, that in July and August, 1926, immediately
 
 *438
 
 following the adjournment of the Legislature, that the commissioner of conservation inspected several proposed sites near Lake Bruen and had them surveyed, and later secured the assistance of the United States Bureau of Fisheries, which sent two expert engineers who, in company with the assistants of the commissioner of conservation, selected, from among the sites proposed, one which was approved by the commissioner and the engineer of the department of conservation. The agreed statement also shows that the work was suspended during the spring and summer of 1927; that in the fall of 1927, the commissioner had the necessary plans made by competent engineers; that the work has gone forward steadily, and the fish hatchery has been almost completely constructed; that the work is such as to require for its completion more than two years; and that to date more than $22,000 has been spent in the construction of the hatchery, which sum was temporarily borrowed from other departments, presumably, we may say, departments of the conservation commission. The agreed statement of facts also shows that there was no balance in the conservation fund at the close of either the fiscal year 1926-27 or that of 1927-2S, after all other appropriations had been taken care of, although the three preceding fiscal years showed substantial balances, not appropriated; that at the end of the fiscal year 1928-29 there was in the conservation fund, not otherwise appropriated, $44,392.84, unless it be held that this balance was appropriated by Act 69 of 1928; that in June, 1929, the commissioner drew a warrant on the state auditor for the $25,000, appropriated by Act 109 of 1926; that on July 3,1929, the auditor honored the commissioner’s warrant by drawing warrant No. 6631 for $25,000 on the state treasurer; that the state treasurer refused to pay the warrant, although the Attorney General advised the treasurer that the warrant was legally drawn and should be paid.
 

 It will be observed from what has been said that there was no money, not otherwise appropriated, in the conservation fund at the close of either the fiscal year 1926-27 or 1927-28, and that, at the close of the fiscal year 1928-29, which was the third fiscal year after the appropriation was made, there was a balance in the conservation fund, not otherwise appropriated, of $44,392.84. It will also be observed that the work to be done was of such a nature as to require more than two years to complete it.
 

 As we have said, one reason why the treasurer declines to honor the auditor’s warrant is because in his opinion the appropriation expired under section 1 of article 4 of the Constitution of 1921, before the warrant was presented. This section, so far as it may be pertinent, reads as follows: “No money shall be drawn from the treasury except in pursuance of specific appropriation made by law; nor shall any appropriation of money be made for a longer term than two years. * * * ”
 

 A case similar to the present one is that of Benedict v. City of New Orleans, 115 La. 645, 39 So. 792-795. In that ease it appeared that the state appropriated $200,000, out of its surplus interest fund, to aid in the construction of a court building in the city of New Orleans, payable at such times and in such amounts as the courthouse commission might recommend and the Governor approve. The plaintiff attacked the act making the appropriation, and certain other acts connected therewith, on the ground that they were unconstitutional. One of the grounds of attack was that the act making the appropriation was unconstitutional, because it contravened article 45 of the Constitution of 1898, under which the appropriation was made, in that it
 
 *440
 
 made the appropriation payable at such times and in such amounts as the commission might recommend and the Governor approve, thus making the appropriation extend, if necessary, far beyond the two years permitted by article 45 of the Constitution of 1898, and making it an indefinite appropriation, so far as the period of two years is concerned. Article 45, it may be said, is in all respects similar to section 1 of article 4 of the present Constitution. The court, in disposing of the question, said:
 

 “We fail to see how or wherein the fact that this appropriation is to be expended and drawn out of the treasury only when occasion for doing so should arise makes it exceptionable or peculiar. Every appropriation stands on precisely the same footing. Even the alimony of the different state institutions is appropriated in a lump sum, and is, or should be, drawn out of the treasury and spent only when the occasion arises. To say that these appropriations are unconstitutional, because not required to be drawn out and spent with-. in the two years, is assuredly to put upon this article 45 a construction never dreamed of by its framers. In last analysis, the objection resolves itself into the proposition that every appropriation must be conditional upon the amount thereof being spent within two years. Suffice it to say that the Constitution does not so provide.”
 

 In view of the fact, which is admitted to be true, that the work to be done for which the appropriation, in this instance, was made, requires more than two years to accomplish, we think that the foregoing quotation is applicable here, and consequently that, unless the second defense is well founded, the treasurer should honor the warrant of the auditor.
 

 However, before reaching the second defense, it may be said that it is urged that the quotation from the Benedict Case is not applicable here, first, because there the Legislature was directed by article 88 of the Constitution of 1898 to provide suitable and commodious quarters for the Supreme Court and the state library, and was carrying out that mandate by making the appropriation, and, secondly, because the Legislature, two years later, reappropriated the money for the same purpose. While these facts appear in the statement of the case, it will be observed, nevertheless, that the court did not pitch its decision of the question upon them. In fact, we fail to see wherein article. 88 of the Constitution of 1898 differentiates the Benedict Case from the present one, since article 88 was in no sense controlling there. Nor do we see wherein the so-called reappropriation differentiates this case from the Benedict Case. In fact, a mere reference to’the act, quoted in the opinion, making the so-called appropriation, will show that the appropriation was nothing more than a confirmation of what had been done, rather than a reappropriation. As said, the opinion in the Benedict Case rests on neither of these points, urged by defendant.
 

 Concerning the second defense, in our view, Act 69 of 1928, relative to the Northwest Louisiana game and fish preserve, does not affect Act 109 of 192C, making the appropriation in question here.’ As correctly observed Iby the trial judge: “Act 69 of 1928 is merely an amendment of Act 191 of 1926, increasing the appropriation for the game and fish preserve, made in the original act. Thus it will be observed that the two works, the ‘fish hatchery’ and the ‘game and fish preserve’ were originally conceived and authorized by the same legislative session, i. e., 1926. Acts 109 and 191 of 1926 were approved by the Governor on July 8th and July 10th, respectively. Therefore the appropriation made in Act 109
 
 *442
 
 of 1926 clearly had precedence over the appropriation made in Act 191 of 1926, and its amendatory Act 69 of 1928. Certainly the two statutes, and the respective appropriations, contemplate distinct types of public work, located in different localities of the state. And the acts not being in conflict it would not do to assume that the Legislature intended to nullify the first appropriation, and abandon the work authorized, with the resultant waste of public funds.” In fact, the Act of 1928 makes the appropriation put of moneys in the conservation fund not otherwise appropriated.
 

 The present commissioner has been substituted as party plaintiff in lieu of Valentine K. Irion, whose term has expired.
 

 The judgment of the trial court, making the alternative writ of mandamus peremptory, is correct.
 

 The judgment is affirmed.
 

 O’NIELL, C. J., and ROGERS and BRU-NOT, JJ., dissent.