CALDWELL *v.* DONAGHEY.

Opinion delivered April 28, 1913.

1. STATE—CONTRACT TO BUILD CAPITOL BUILDING—AGENTS OF STATE—TRESPASS.—Where the State owned property and contracted with plaintiffs to erect a building thereon for public use as a State Capitol, it merely granted to plaintiffs the right to enter upon the premises for the purpose of constructing the building in accordance with the terms of the contract, and plaintiffs had no other right in or to the premises; and when the State by legislative enactment discharged plaintiffs and a legally appointed commission took possession of the unoccupied building on the State's property, an action against the commissioners for unlawful trespass can not be sustained. (Page 63.)

2. STATE—RIGHT OF CONTRACTOR TO POSSESSION OF PREMISES.—One who contracts with the State to construct a building on the State's premises, can not hold possession against the will of the State's authorized agents. (Page 63.)

3. CONSTITUTIONAL LAW—POWER OF STATE TO ANNUL ITS CONTRACT.—A State by legislative enactment may violate a contract, but the obligation, as in the case of an individual remains unimpaired. The State has power to annul, cancel and set aside a contract, although the obligation remains after the contract has been broken, so when the State enters into a contract with a firm of contractors to build a State Capitol building, the Legislature has the power to pass an act annulling and setting aside the contract, and such act is not unconstitutional as impairing the obligation of the contract. (Page 65.)

4. STATE—SUIT AGAINST—SPECIFIC PERFORMANCE.—A contractor who has entered into a contract with the State to erect a State Capitol building can not compel the State to perform its part of the contract by specific performance. A suit to compel a State to perform its contract can not be maintained. (Page 67.)

5. CONSTITUTIONAL LAW—POWER OF STATE TO ANNUL CONTRACT—RIGHT TO SUE STATE UPON ITS OBLIGATION.—While a State may, by legislative enactment, annul a contract made with contractors to erect a public building, and such annullment does not impair the obligation of the contract, the fact that the State can not be sued upon its obligation has no bearing upon the question of the constitutionality of the act. (Page 67.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*J. W. Blackwood,* for appellant.

1. The State can not enact laws impairing or ma-

terially affecting its contractual obligations. The acts assailed are within the prohibited class and are no protection to defendants. 16 Wall. 203, 233; 15 How. 308; 16 How. 370; 6 Cr. 87; 103 U. S. 302; 105 U. S. (26 L. Ed.) 1090; 134 *Id.* 842, 849; 3 Ark. 285; 12 Wheat. 213, 327; 8 *Id.* 184; 6 How. (12 L. Ed.) 447; 14 Ky. (4 Litt.), 34, 35, 47, 69; 96 U. S. (24 L. Ed.), 793; 140 U. S. (35 L. Ed.), 363; 1 Kent, Com. 414-419.

2. This is not an action against the State. 140 U. S. (35 L. Ed.), 363; 70 Ark. 568, 583-4; 216 U. S. 165; 209 *Id.* 123; 221 *Id.* 636; 109 *Id.* 446, 452; 93 Ark. 519, 520; 6 Wheat. 264.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. A contractor who has a lien does not acquire the right of possession. Phillips on Mech. Liens, § 9; Boisot on Mech. Liens, § 7; Overton on Liens, § 547. No public building is subject to mechanic's liens. 49 Ark. 94-7; 55 *Id.* 476.

2. The Patterson and Oldham acts did not impair the obligations of the contract. 1 Denio 317; 64 N. Y. 107; 89 *Id.* 45; 36 N. W. 794-7; 106 U. S. 96; 15 N. E. 422; 108 N. Y. 542; 15 A. & E. Enc. L. 1041; 70 Ark. 585.

McCULLOCH, C. J. The State of Arkansas entered into a written contract with appellants, Caldwell & Drake, dated August 14, 1903, whereby the latter undertook to construct for the State, on its grounds, a new State Capitol building for a certain price, payable in installments on certificates of the architect as the work progressed. The work of constructing the building progressed until the year 1907, when interrupted by failure of the General Assembly to make appropriation of funds for payments under the contract. Appellants, upon instructions from the State Capitol Commission, boarded up the openings of the uncompleted building and suspended work thereon until an appropriation could be made at the next (1909) session of the General Assembly. The General Assembly of 1909 passed an act discharging appellants as contractors, also discharging the

architect, George R. Mann, and the capitol commissioners, and creating a commission to "adjust the controversy between the State of Arkansas and Caldwell & Drake" concerning the performance of the contract. That statute is commonly known as the Patterson Act. Subsequently at the same session another statute was enacted entitled "An Act to provide for carrying forward the work on the new State Capitol and making appropriations therefor, and for paying any sums which may be found due the former contractors, and for the creation and appointment of a capitol commission and defining its duties." That is known as the Oldham Act, Acts 1909, page 727, and it provided that the new commission should be composed of the Governor of the State and four other citizens to be appointed by him. Appellee, George W. Donaghey, was then Governor of the State, and, pursuant to the terms of the statute, he appointed his coappellees, John I. Moore, H. L. Remmel, Chas. L. Thompson and R. F. Foster, as the other members of the commission.

A synopsis of each of the statutes above referred to is set forth in the two opinions of this court in *Jobe* v. *Caldwell,* 93 Ark. 503, and 99 Ark. 20, and it is unnecessary to set them out again.

The capitol commission, composed of appellees, proceeded, pursuant to the terms of the Oldham Act, to take possession of the uncompleted building and to let a new contract for its completion. According to the allegations of the complaint in this case, they broke the locks, took possession of the building over the protest of appellants, who claimed to be in possession thereof, and caused to be torn out, certain portions of the building which appellants had constructed.

Appellants assert that by reason of said acts of appellees in taking from them the possession of said uncompleted building and "by advertising to the world that these plaintiffs have been discharged" they sustained damages in the sum of $250,000, and they instituted this action against appellees in the circuit court of

Pulaski County to recover the damages alleged to have been thus sustained.

The circuit court sustained a demurrer to the complaint, and from the final judgment of the court rendered upon the failure of appellants to plead further, an appeal to this court is prosecuted.

This is characterized by learned counsel for appellants as simply an action to recover damages for unlawful trespass committed by appellees. The substance of the argument is that appellants were in lawful and peaceable possession of the State's property for the purpose of performing their contract with the State and had the right to retain possession until they completed the Capitol building according to contract; that the statutes enacted by the General Assembly of 1909, attempting to discharge appellants as contractors, and to complete the building through other agencies, were unconstitutional and void as impairing the obligation of the State's contract with appellants, and that all acts of appellees in going upon the premises and disturbing appellant's quiet possession, constituted trespass which rendered appellees liable in damages for any injury which resulted. This argument involves the inquiry, primarily, into the question as to what possessory rights appellants had, if any, as between them and the State, to the latter's premises and the building thereon in process of construction. The State owns the premises and merely contracted with appellants to erect a building thereon for public use as a capitol or seat of government. The answer is plain that the State did not cede to appellants, either partially or exclusively, its possessory right to the premises. It merely granted to them the privilege or license to enter upon the premises for the purpose of constructing the building according to the terms of the contract. That did not constitute either a right to the premises or a right in same.

Even between individuals, whether a lien be given by statute or not, a building contractor does not acquire, against the owner, the right to hold possession of the

premises. Overton on Liens, § 547; Phillips on Mechanic's Liens, § 9; Boisot on Mechanic's Liens, § 7. For a stronger reason one who contracts with the State to construct a building on its premises, can not hold possession against the will of the State's authorized agents.

With that question out of the way it remains to inquire whether the statutes of 1909, which discharged appellants and provided other agencies for completing the building, were valid, or whether they were unconstitutional as impairing the obligations of appellant's contract with the State. We speak of the Patterson Act discharging appellants as contractors. That is what we said of it in the opinion in *Jobe* v. *Caldwell*, 99 Ark. 20. "Whatever else may be said of the Patterson Act," is the language used, "it abrogated the contract with plaintiffs to the extent that the State refused to allow further performance, and it also amounted to an assertion that the condition of accounts between plaintiffs and the State called for an adjustment."

Let us say now that the Patterson Act was, at least, a determination by the State, speaking through its highest agency, not to permit appellants to complete the building. Whether or not the Legislature did right in that respect depends on the question of fact whether appellants had broken the contract (a question we do not have to decide in this case), for the State had no greater right than an individual to refuse performance of its contract. The exact language of the Patterson Act is that the contract with Caldwell & Drake "is hereby annulled, cancelled and set aside." We are only concerned, so far as relates to the present controversy, with the effect of the statute in withdrawing the State's consent to the completion of the building by appellants. That much is embraced in the language used, whatever else may have been intended, and to that extent the statute was valid, even if it was unjust and amounted to a violation of the contract. There is a wide distinction between the power to break a contract and the right to do so. The one thing may exist in the absence of the

other. The power to violate a contract exists when the circumstances are such that courts will not decree specific performance; but the right to do so depends upon some justification recognized in the law. The present case is only affected by the State's exercise of its power to treat the contract with appellant as broken; and we are not called upon now to determine the question of its justification in doing so, for the power to violate a contract does not necessarily involve the impairment of the obligation. The obligation remains after the contract has been broken.

The General Assembly controls the economic and administrative policies of the State, and if the statutes in question wrongfully violated the contract with appellants, the obligation of that contract remains unimpaired; but the power of the Legislature to violate the contract can not be questioned any more than the exercise of the like power by an individual.

The doctrine applicable to this case is very clearly stated by the New York Court of Appeals in the case of *Lord* v. *Thomas,* 64 N. Y. 107. The State of New York had contracted for the erection of a certain building, but before the completion of the building, discharged the contractors and appointed commissioners with directions to construct the building upon another plan. An injunction was sought in that case by the contractors, and the court said:

"The State can not be compelled to proceed with the erection of a public building, or the prosecution of a public work at the instance of a contractor with whom the State has entered into a contract for the erection of a building or the performance of the work. The State stands, in this respect, in the same position as an individual, and may at any time abandon an enterprise which it has undertaken, and refuse to allow the contractor to proceed, or it may assume the control and do the work embraced in the contract by its own immediate servants and agents, or enter into a new contract for the performance by other persons, without reference to

the contract previously made, and although there has been no default on the part of the contractor. The State in the case supposed would violate the contract, but the obligation of the contract would not be impaired by the refusal of the State to perform it. The original party would have a just claim against the State for any damages sustained by him from the breach of the contract, and although the claim could not be enforced through an action at law, the remedy by appeal to the Legislature is open to him, which can, and it must be presumed will, do whatever justice may require in the premises. This remedy is the only one provided in such a case, and this is known to the party contracting with the State, and the courts can not say that it is not certain, reasonable and adequate.''

In a later case involving the same contract, where the contractors had sued the State for recovery of damages, the court again said:

''Where a valid contract has been entered into, on behalf of the State by its duly authorized agents, for the construction of a public work, it can not, in the absence of any stipulation authorizing it so to do, destroy or avoid the obligation of the contract. While it may refuse to perform and arrest performance on the part of the contractor, it is liable for the breach of the contract the same as an individual and the contractor is entitled to claim prospective profits.'' *Donolds* v. *State,* 89 N. Y. 45.

In *Brown* v. *Colorado,* 106 U. S. 96, there was a controversy between the State of Colorado and an individual who had conveyed certain lands to the Territory before admission to Statehood for the purpose of erecting a capitol. He refused to surrender possession and the State brought ejectment and recovered possession of the land. The Supreme Court of the United States, speaking through the then Chief Justice, said:

''The most that can be said * * * is, that in this way the contract was violated by the State. * * * All the obligations of the original contract remain, and the State

has not attempted to impair them. If the contract is all that he claims it to be, and the Constitution and statutes are just what he says they are, the most that can be contended for is that the State has refused to do what the Territory agreed should be done. This may violate the contract, but it does not in any way impair its obligation.''

The same thought is announced by the following authorities: 15 Am. & Eng. Enc. of Law, p. 1041; *Clark* v. *Marsiglia,* 1 Denio, 317; *McMaster* v. *State,* 108 N. Y. 542; 15 N. E. 422; *Sanilac County* v. *Alpine,* 68 Mich. 659; 36 N. W. 794, 797.

In the recent case of *Falls City Construction Co.* v. *City of Fort Smith,* 107 Ark. 148, 154 S. W. 496, which involved a controversy concerning the construction of a county courthouse, we said that a contractor could not compel the county to construct a building, whatever might be the rights under the contract to recover damages for nonperformance. That principle has its force in this controversy, for any other view would permit the contractor to compel the State to proceed with the construction of the building against the express will and determination of the lawmakers.

The fact that the State can not be sued upon its obligation has no bearing upon the question. If the contract was one which appellants could require the State to specifically perform, then there might be some plausibility in the claim that the commissioners subsequently appointed had no right to interfere with the performance of the contract by appellants. But the contract, even if made with an individual, was not one which a court of equity would require to be specifically performed. *Leonard* v. *Board of Directors of Plum Bayou Levee District,* 79 Ark. 42, and cases therein cited.

Moreover, any action for the purpose of compelling the State, either directly or indirectly, to perform the contract, would be a suit against the State and could not be maintained. *Pitcock* v. *State,* 91 Ark. 527.

The decisions of the Supreme Court of the United

States cited by appellants on the brief announce principles which have no application here. Those cases involve statutes which attempted to take away the rights of parties and impair the obligation of contracts, whereas in the present case the acts of the Legislature, as we have already shown, to the extent that they discharged appellants and withheld permission to proceed further in the construction of the building, did not impair the obligation of the contract.

After the State had, through the enactment of the statute known as the Patterson Act, elected not to proceed with the construction of the building under the contract with appellants, another statute, the Oldham Act, provided for the creation of a new commission, and appellees, as such commissioners, were clearly within their legal rights in proceeding with the construction of the building, pursuant to the mandate of the last-mentioned statute. They were not trespassers but were acting in the line of their duty and are not liable to appellants in any sum. The judgment of the circuit court is therefore affirmed.

### CONCURRING OPINION.

Wood, J. The Patterson and Oldham Acts in so far as they "annul, cancel and set aside" the contract of the State with Caldwell & Drake are unconstitutional and void. For to cancel a contract destroys its obligations. No rights can be set up under a contract after same has been "cancelled, annulled and set aside." But even though the facts mentioned be void in this particular, they may stand in other respects. For it is obvious when the whole acts are considered together, that the Legislature could and would have passed them with this unconstitutional feature eliminated; and it may be left out, leaving the acts complete. It was within the power of the General Assembly to discharge Caldwell & Drake. They had no possessory or property rights in the Capitol building. Therefore the Legislature could provide for their discharge and for the completion of the Capitol in the manner it has done without impairing the obli-

gations of the contract of the State with Caldwell &
Drake, as I endeavored to show in my dissenting opinion
in *Caldwell & Drake* v. *Jobe,* 93 Ark. 503.

The Legislature did not discharge them without
making an appropriation for paying what was already
due them under their contract, and thus recognized the
binding force of the contract. See case, *supra.* The
obligation of the State to pay them for any profits they
would have earned under the contract, is not germane
to the issue here presented, which is simply that of tres-
pass upon alleged possessory or property rights in the
Capitol building itself.