## WARMACK v. MAJOR STAVE COMPANY.

### Opinion delivered January 28, 1918.

1. CONTRACTS—PUBLIC UTILITY—ELECTRIC CURRENT—REMEDY OF PATRON—INJUNCTION.—Appellee had a contract with an electric light company to supply it with current for light; the company held a franchise from the city to furnish current for the city's use. Appellant purchased the assets of the company and refused to furnish current to appellee. *Held*, equity should not order specific performance of the contract, but where appellee had paid for the current an injunction would lie to prevent the cutting off of the supply of current, or if the current had been turned off by the public utility company, a mandatory injunction may be issued to compel it to turn the current on again.

2. PUBLIC SERVICE COMPANIES—RIGHT TO MAKE SPECIAL CONTRACTS.—The principle that an electric company, operating under a public franchise, must supply all persons impartially and without discrimination, does not prevent it from entering into reasonable arrangements or agreements with its customers growing out of special circumstances.

3. CORPORATIONS—SALE OF ASSETS—ASSUMPTION OF DEBTS.—Where the entire assets of a corporation are transferred, the purchaser is not liable for its debts unless they are assumed. *Held*, in this case that the finding of the chancellor that the purchaser of the assets of an electric light company assumed a special contract to furnish current to appellee, would not be disturbed on appeal.

Appeal from Little River Chancery Court; *James D. Shaver*, Chancellor; modified and affirmed.

*June R. Morrell,* for appellant.

1. The chancellor erred in finding that appellant knowledge of the contract and was bound to carry it out is no allegation to that effect and no proof of it. 43 Ark. 303; 11 *Id*. 134; 29 *Id*. 500.

2. The chancellor's finding that appellant had full knowledge of the contract and was bound to carry it out is against the evidence. 102 Ark. 383; 102 *Id.* 685; 104 *Id.* 475.

3. A purchaser of the property of a corporation is not bound to carry out its contracts. 97 Ark. 106; 86 *Id.* 300; 196 S. W. 49.

*Geo. R. Steel* and *A. D. Dulaney,* for appellee.

1. All the findings of the chancellor are sustained by the proof. Appellant was the owner of the company and purchased with knowledge of the contract. 92 Ark. 30, 535; 67 *Id.* 200; 73 *Id.* 489; 104 *Id.* 475.

2. Appellant was advised that the company was a corporation, owning stock. He investigated the assets and machinery, etc. He had ample opportunity to know of the contract. There was no allegation of the sale of the stock, but the complaint will be treated as amended to conform to the proof. 100 Ark. 217; 40 *Id.* 352; 29 *Id.* 323.

3. Appellant is the successor of the corporation and bound by its contract under the franchise. 107 Ark. 119; 112 *Id.* 260; 5 Thompson on Corporations (2 ed.), § 609.

### STATEMENT OF FACTS.

The Major Stave Company instituted an action in the chancery court against L. M. Warmack to compel him to furnish it electric lights in accordance with the terms of a contract entered into between it and the Ashdown Light & Power Company to whose rights and liabilities Warmack succeeded. The material facts are as follows:

R. B. Bryant was granted a franchise by the town of Ashdown in Little River County, Arkansas, to furnish to its inhabitants electric lights. In the early part of 1912 Bryant assigned the franchise to the Ashdown Light & Power Company, a domestic corporation. On the 26th day of July, 1912, the Ashdown Light & Power Company entered into a contract with the Major Stave Company, a corporation in the town of Ashdown, situated near the

property of the Light & Power Company, whereby the stave company, in consideration of 40 per cent. of the gross earnings of the light and power company, agreed to furnish steam power for the operation of its light plant. The light and power company continued to operate under this contract until the 15th of August, 1914, at which time in consideration that the stave company would release it from the contract, the light and power company agreed to furnish to the stave company free electric current for a period of three years from that date for the purpose of lighting the plant of the stave company, provided the current should not exceed an average of one kilowatt per day. The light and power company installed at the plant of the stave company a one-kilowatt transformer for the purpose of measuring the current. H. G. Sanderson was a stockholder in the light and power company and purchased all of the stock of said corporation in the spring of 1915. He permitted certain of the officers of the corporation to retain one share of stock each in order to preserve the corporate existence. Sanderson continued to furnish light to the stave company in compliance with the contract above referred to. On the 20th day of December, 1915, H. G. Sanderson and L. M. Warmack entered into a written contract whereby the former agreed to exchange all the property of the light and power company, together with its franchise, with Warmack for certain property owned by him.

Sanderson testified that he advised Warmack of the contract the light and power company had with the stave company; that he thinks he advised him of all the contracts that the light and power company had with various parties; that he turned over to Warmack the insurance policies of the light and power company and certain contracts which had been made with the railroad companies and a contract with the water and sewer district; that he transferred the stock of the light and power company to Warmack and tendered it to him; that Warmack refused to receive it.

The testimony of Sanderson was corroborated by that of A. D. DuLaney. He testified that on March 15, 1916, he turned over to Warmack the abstract of real estate of the light and power company in Ashdown, a certified copy of the passage of the ordinance granting the franchise, certain insurance policies and a contract with the three railroad companies entering the town, and a contract with the water and sewer district. The contract with the stave company was carried out until Warmack took charge of the plant in 1916, when he refused to further furnish light to the stave company under the contract.

L. M. Warmack testified that he bought all the property of the light and power plant in Ashdown, which was formerly owned by the Ashdown Light & Power Company, from H. G. Sanderson; that he did not buy any stock in the Ashdown Light & Power Company and did not know there was any stock; that he did not know that this corporation was in existence at the time he exchanged property with Mr. Sanderson; that Sanderson did not advise him that the corporation was in existence and did not advise him of any contract between that corporation and the stave company; that he did not at the time agree to carry out any contract with the stave company; that he knew that Mr. Sanderson held a franchise from the town of Ashdown. On cross-examination he admitted that Sanderson told him of all the contracts that were bringing in money. He also admitted that he knew there was a contract with the three different railroads entering the town and one from the school district. He stated that at the time he bought the plant that he did not know that the Major Stave Company was receiving light from the plant.

On the part of the stave company it was shown that its plant was situated close to the plant of the light and power company and that the electric light wires ran directly from one company to the other and could be seen by any one who examined the light and power plant. Other facts will be stated or referred to in the opinion.

The chancellor found in favor of the Major Stave Company and issued a mandatory injunction directing Warmack to furnish it with light under the contract referred to in the statement of facts and also decreed the specific performance of that contract. Warmack has appealed.

HART, J., (after stating the facts). The contract in question was executed on the 15th day of August, 1914. Prior to that time there was a contract between the light and power company and the Major Stave Company whereby the latter was to furnish the power for running the plant of the former and was to receive therefor 40 per cent. of the gross earnings of the former. The light and power company desired to furnish its own motive power and for that reason entered into the contract in question. In consideration of being released from its former contract, and all claims or liability thereunder, it agreed that it would furnish the stave company the electric light used in its plant for the term of three years, provided the current should not exceed an average of one kilowatt. The light and power company performed this contract from the date of its execution on August 15, 1914, until the early part of January, 1916, when Warmack purchased the property of the light and power company and its franchises, which were assigned to him.

(1) The court should not have directed the specific performance of this contract. In the case of *Leonard* v. *Board of Directors of Plum Bayou Levee District,* 79 Ark. 42, the court held that equity will not decree specific performance of an executory contract to do ordinary work, as to build a levee, for the reason that there is no method by which its decree could be enforced. It does not follow, however, that the stave company was not entitled to injunctive relief. The light and power company was granted a franchise by the town of Ashdown to furnish electric lights to the town and the inhabitants thereof. In the enjoyment of this public franchise, it had the exclusive right to furnish electricity to the town and the inhabitants thereof. The stave company owned and op-

erated a stave plant in the town and the furnishing of electric current for lighting its plant was one of the ordinary and natural uses which was contemplated when the franchise was granted to the light and power company. The stave company had paid for the light. Under these circumstances an injunction will lie to prevent the cutting off of the supply of light, or if the current has been turned off by the public utility company, a mandatory injunction will be issued to compel it to turn the current on again. McQuillan on Municipal Corporations, Vol. 4, §§ 1773 and 1774, and Dillon on Municipal Corp., 5 ed., vol. 3, par. 1317.

(2) It is neither claimed nor shown that the contract in question is such a special contract that it prevents the corporation from supplying all its customers in the town of Ashdown. There is nothing in the record tending to show that there is anything in the ordinance granting the franchise to the light and power company that would prevent it from entering into the contract in question. The principle that the company must supply all impartially and without discrimination does not prevent it from entering into reasonable arrangements or agreements with its customers growing out of special circumstances. Dillon on Municipal Corporations, 5 ed., vol. 3, § 1317, p. 2207.

(3) Again it is contended that by the terms of the contract that Warmack was not required to carry out the contracts of the light and power plant. It is true the mere transfer of the assets of one corporation to another corporation or individual does not make the latter liable for the debts of the first corporation, but a corporation or individual may become liable for the debts of another corporation where it has expressly or impliedly assumed them. *Spear Mining Co.* v. *Shinn,* 93 Ark. 346, and *Good* v. *Ferguson & Wheeler, etc., Co.,* 107 Ark. 118.

The chancellor found that Warmack had at least impliedly assumed to carry out the contract with the light and power company. It is a settled rule of this court not to disturb the finding of fact made by a chancellor unless

it is against the preponderance of the evidence. As we have already seen, the light and power company was granted a franchise to supply the town of Ashdown and its inhabitants with electric lights. Warmack was operating the light plant under this franchise. He admits that he was carrying out all the contracts with consumers who were making monthly payments for lights furnished them. He also admits that he knew of the special contracts which had been made with the three railroads entering the town and with the school district. Sanderson testified that he told him of the existence of the contract in question. The plant of the stave company was situated near that of the light company and the wires ran direct from the plant of the light company to that of the stave company. It may be fairly assumed that Warmack saw these wires. He denies that he knew of the existence of the corporation called the Ashdown Light & Power Company, and says that he thought Sanderson was operating the plant in his own individual right. Sanderson testifies, however, that he told him the corporation was operating the light plant. Besides this, the insurance policies and special contracts which were turned over to Warmack and which he admitted receiving were notice to him that the corporation was operating the light plant. It is apparent from all the circumstances detailed in the statement of facts as well as others, small in themselves, which have been omitted from the statement of facts, that Warmack at least impliedly assumed to carry out all the contracts for furnishing lights of the light and power company with the inhabitants of the town. He knew he could only operate under the franchise granted to that company and all the circumstances introduced in evidence pointed to the fact that he assumed to carry out the lighting contracts of the company.

From the views we have expressed it follows that the court should not have directed the specific performance of the contract but was correct in granting a mandatory injunction to compel Warmack to again turn on the current at the plant of the stave company. In this way the

relative rights of the other residents of the town to be supplied with lights impartially and without discrimination will be preserved should the occasion arise therefor, caused by the inability of the light company to furnish sufficient lights for all consumers, or for other good reason.

Therefore, the decree in so far as it grants specific performance of the contract will be reversed, and in so far as it grants a mandatory injunction in favor of the stave company against Warmack to have the current again turned on at the plant of the stave company will be affirmed.