MONTGOMERY COUNTY CANNING COMPANY *v.* BATES.

4-8250                                                      203 S. W. 2d 195

Opinion delivered June 23, 1947.

*Wootton, Land & Matthews,* for appellant.

*C. H. Herndon* and *Witt & Witt,* for appellee.

MINOR W. MILLWEE, Justice. Appellees are five citizens of Montgomery county, Arkansas, and instituted this suit in equity on behalf of themselves and 66 other former stockholders in the Montgomery County Canning

Company to enjoin appellants, E. L. Peterson and the canning company, from dismantling and removing a canning plant from Montgomery county and to require specific performance of a contract to continue operation of the plant at Mt. Ida, Arkansas.

In the complaint filed October 7, 1946, it is alleged that on February 19, 1946, Montgomery County Canning Company, an Arkansas corporation, through its duly authorized officers executed a contract with appellant, E. L. Peterson, whereby it agreed to sell Peterson all the assets of the corporation including the canning plant, equipment and the lands upon which the plant was located in Mt. Ida for $7,000 and the further consideration that Peterson would improve and expand the plant to better serve the farmers of the surrounding territory; that on February 21, 1946, all of the stockholders of the canning company sold, transferred and delivered their respective shares of stock in the canning company to appellant, Peterson, under a written assignment as follows: "E. L. Peterson of Salisaw, Oklahoma, has agreed to pay the mortgage indebtedness now existing against the Montgomery County Canning Company aggregating Seven Thousand Dollars if the stockholders of said company will transfer and assign all of the stock owned by each and for and in consideration of such transfer of stock, the said E. L. Peterson agrees to pay Two Thousand Dollars on the past due indebtedness of the Montgomery County Canning Company as evidenced by his check in that amount, dated February 19th, 1946, and to assume indebtedness of Five Thousand Dollars which is the balance due by said Company for money borrowed, and he also agrees to improve and expand said Canning Plant in such way that it will be enabled to serve the farmers, berry and vegetable growers in this territory and to operate the plant in the town of Mount Ida, Arkansas."

The complaint further alleged that, at the time of the sale and transfer of the stock to Peterson, it was represented to the shareholders that Peterson was an experienced and successful manager and operator of

canning plants, and the sole consideration and motive in transferring their stock was to establish and secure to the farmers in the surrounding territory a canning plant that would furnish a local market for the vegetable and berry growers in said territory; that it was agreed that the canning plant would remain and be operated at its present location as a permanent industry; that none of the shareholders who transferred his stock to Peterson received any consideration in money or property, but said transfer was made under the agreement and belief that the plant would remain at its present location and be operated for the benefit of the people in the territory; that soon after acquiring the stock, Peterson transferred some of the shares to other parties, elected new officers and continued to operate under the name of Montgomery County Canning Company; that during the spring canning season of 1946 appellants canned 11 car loads of blackberries which were purchased from local farmers.

It was further alleged that on October 4, 1946, appellant canning company, under the management of appellant Peterson and in violation of its agreement with appellees, began dismantling and removing the canning plant and equipment to Mansfield, Sebastian county, Arkansas; that under present market conditions it is impossible for appellees to secure canning equipment of similar type, and they will suffer irreparable injury by removal of the machinery and equipment from its present location; and that appellees have no full and adequate remedy at law for the damages they will suffer if appellants be allowed to proceed with the dismantling and removal of the plant and equipment.

The prayer of the complaint is that appellants be enjoined from proceeding to dismantle or remove the buildings and equipment of the canning plant, and from selling the lands upon which the plant is located; that a temporary injunction be granted, restraining appellants from dismantling and removing the buildings and equipment of the plant, and upon final hearing that the injunction be made permanent; and that appellants be required to comply with their contract with appellees

and to continue operating the canning plant at Mt. Ida, Arkansas. A temporary injunction was granted restraining appellants from dismantling or removing the plant and equipment upon execution and filing of bond by appellees in the amount of $500.

Appellants filed a motion to dismiss the complaint alleging that the suit was one to require them to specifically perform an executory contract, and that the chancery court was without jurisdiction; that the relief sought is such that obedience to the decree could not be compelled by ordinary processes of the court; that there was a lack of mutuality of obligation, and that appellees have an adequate and complete remedy at law. Although the motion did not contain a prayer for damages, appellant, E. L. Peterson, testified that damages in the sum of $8,911.51 were sustained by appellants as a result of the issuance of the temporary injunction on October 7, 1946.

The motion to dismiss, which was in reality a demurrer and apparently treated as such by the chancellor was sustained on November 7, 1946, and a decree was entered dismissing the complaint of appellees and denying damages to appellants on account of the issuance of the temporary injunction. Appellants have appealed from that part of the decree denying damages against appellees for wrongful issuance of the temporary injunction. Appellees have cross-appealed from the order of the court sustaining the motion to dismiss the complaint.

We first consider the cross-appeal which involves the correctness of the trial court's action in sustaining the motion to dismiss the complaint. Appellants say the trial court correctly applied the doctrine laid down in *Leonard v. Board of Directors of Plum Bayou Levee District*, 79 Ark. 42, 94 S. W. 922, 9 Ann. Cas. 159, in dismissing the complaint. In that case the levee district brought suit against Leonard alleging that he had agreed to complete construction of a levee and had abandoned the work. The district prayed that Leonard be enjoined from removing his teams and that he be compelled to proceed with the work. This court held the suit one to require specific per-

formance of the executory contract to construct the levee and that equity was without jurisdiction, the district having an adequate remedy at law. The court said: ''Equity will not decree specific performance of an executory contract to do work, for the obvious reason that there is no method by which its decree could be enforced.

"The jurisdiction of equity will not be exercised to decree a specific performance, however inadequate may be the remedy for damages, where the contract is of such a nature that obedience to the decree could not be compelled by the ordinary processes of the court.''

The rule announced in the Leonard case, *supra,* was reaffirmed in later decisions. *Caldwell* v. *Donaghey,* 108 Ark. 60, 156 S. W. 839, 45 L. R. A., N. S. 721, Ann. Cas. 1915B, 133; *Nakdimen* v. *Atkinson Imp. Co.,* 149 Ark. 448, 233 S. W. 694. Under this rule appellants could not be required to continue operation of the canning plant at Mt. Ida by a decree of specific performance, but it does not necessarily follow that appellees would be thereby precluded from injunctive relief to restrain an attempted breach of the contract by the dismantling and removal of the plant. *Warmack* v. *Major Stave Co.,* 132 Ark. 173, 200 S. W. 799. A contract cannot be rescinded merely because it is of such a character that specific performance cannot be demanded. 17 C. J. S., Contracts, § 417. In 28 Am. Jur., Injunctions, p. 273, it is said: ''It was formely thought that an injunction would not be granted to restrain the breach of any contract, unless the contract was of a character that the court could specifically enforce. But the fair result of the authorities may be said to be that where the case is one in which the negative remedy by injunction will do substantial justice between the parties by compelling the defendant to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason or policy against it, the court will interfere to restrain conduct which is contrary to the contract, although it may be unable to enforce specific performance of it.'' The case of *Pitcock* v. *State,* 91 Ark. 527, 121 S. W. 742, 134 Am. St. Rep. 88, is cited in support of the statement of the textwriter. If

the complaint in the case at bar stated a good cause of action for injunctive relief, the chancellor erred in dismissing the suit even though the court was without jurisdiction to grant specific performance of the contract.

It is true that equity will not restrain a breach of contract where the remedy at law is adequate and complete. *McDaniel* v. *Orner,* 91 Ark. 171, 120 S. W. 829. It appears from the complaint in the instant case that the parties affected by a breach of the contract are numerous so that redress at law would require a multiplicity of suits. It further appears that it would be difficult to accurately measure pecuniary damages that appellees might suffer as a result of the breach of the contract by appellants. It is also alleged that it is impossible to secure equipment of the type sought to be removed. Under these circumstances, we are unwilling to say the remedy of law is adequate.

Appellees alleged in their complaint that appellant Peterson agreed to improve, expand and continue operation of the canning plant at Mt. Ida and that this agreement was the primary consideration for the transfer of the stock in the corporation to Peterson. The complaint further alleges that appellants breached this contract by proceeding to dismantle and remove the plant in October, 1946. It is also alleged that Peterson agreed to operate the plant at Mt. Ida as a permanent industry, but the written assignment set out in the complaint does not provide for a definite period of operation. However, the agreement is not fatally indefinite for that reason since it will be implied that performance is to be for, or within, a reasonable time. As this court said in *Merrill* v. *Sypert,* 65 Ark. 51, 44 S. W. 462, what would be a reasonable time "will depend upon the facts and circumstances surrounding the parties and influencing their conduct in entering upon the contract."

The agreement relied upon by appellees in the instant case is somewhat analagous to a contract between a railway company and a landowner whereby the latter conveys land in consideration of an agreement by the railway company to erect and maintain a depot, or other

appurtenance, at a particular place. In an annotation in 7 A. L. R., p. 817 the rule adopted by the majority of jurisdictions in such cases is stated as follows: ". . . in the absence of a specified term of years or of express and suitable words showing an intention that performance shall be perpetual, a covenant or condition subsequent for the maintenance of a railroad or its appurtenances is sufficiently complied with by a performance covering a term of years, varying in the cases which have so held from five to sixty years." The case of *Railway Company* v. *Birnie,* 59 Ark. 66, 26 S. W. 528, is cited in support of this rule. There the defendant railway company agreed to erect and maintain a depot upon certain lots in consideration of the deeding of the lots to the company by the plaintiffs. This court held it to be a question for the jury whether the maintenance of the depot for 11 years was a sufficient compliance with the agreement. In determining whether the depot was maintained for a reasonable time this court said it was for the jury "to say whether the time was reasonable in the sense that it gave the plaintiffs 'full opportunity' to substantially realize the benefits they at the time of the donation 'reasonably expected to accrue to them from the location of the depot'."

By reference to the rule prevailing in the railway cases we do not mean to suggest that the term of performance held sufficient to constitute a reasonable time therein would be likewise applicable here. It may develop that appellants have already maintained the plant at Mt. Ida for a reasonable period of time under the proof that may be adduced on this issue. They should not be enjoined from removing the plant if its maintenance in Montgomery county is shown to be an impossible or impractical undertaking for them under proper management.

We conclude that the complaint of appellees stated a cause of action for injunctive relief and that the trial court erred in sustaining the motion to dismiss. It necessarily follows that the temporary injunction should not have been dissolved until appellees were afforded an opportunity for a hearing to determine whether the writ

had been wrongfully issued. That part of the decree which, on direct appeal, denies damages against appellees for wrongful issuance of the temporary injunction is, therefore, affirmed. On the cross-appeal, the decree will be reversed and the cause remanded with directions to overrule the motion to dismiss the complaint, and for further proceedings not inconsistent with this opinion.