Fort Smith Refrigeration & Equipment Co., Inc., *v.* Ferguson.

4-9218                               230 S. W. 2d 943

Opinion delivered June 12, 1950.

*Lawrence S. Morgan* and *Franklin Wilder,* for appellant.

*James R. Hale,* for appellee.

DUNAWAY, J. Appellee Ferguson brought this action to recover $750 alleged to be due him under an oral contract with appellant as compensation for procuring a purchaser who bought 300 frozen food locker units from the appellant corporation. From a verdict and judgment in favor of Ferguson, the company has appealed.

In his complaint filed in August, 1946, Ferguson alleged that on or about October 10, 1945, one Leo Bourland, acting as agent of the defendant corporation, engaged the plaintiff to find a buyer for frozen food locker units, the plaintiff to be paid $2.50 per locker unit sold; that 300 units were sold to Gibney Brothers of Prairie Grove as a result of negotiations carried out by plaintiff, and that the defendant had refused to pay the sum of $750 which was due plaintiff under said contract. Bourland was made a co-defendant.

On October 28, 1946, a default judgment was entered against appellant, but was later set aside when it developed that there had been no service of summons on the company. A default judgment against Bourland, entered December 28, 1946, remains unsatisfied. Appellant's answer, filed April 26, 1947, denied the making or ratification of the alleged contract, and denied that Bourland had ever acted as agent for the corporation.

The appellant company was incorporated January 5, 1946. Sam Poulos and William Watkins each were the owners of 249 shares of stock, and Franklin Wilder held two shares. Before the incorporation, Poulos and Watkins had conducted the Fort Smith Refrigeration & Equipment Company as a partnership.

It is not disputed that through Ferguson the purchasers of the 300 locker units were first put in contact with the partnership concern some time in late 1945. It is also conceded that subsequently a written contract between the purchasers and the newly formed corporation was entered into, and that the first payment on the purchase price was made in June, 1946.

There is, however, sharp conflict in the testimony as to the oral contract alleged. At the trial Ferguson testified that Watkins was the one who had promised to pay him the sum of $2.50 per locker unit, although the complaint had alleged that the oral contract was made by Bourland. Bourland testified by deposition for the plaintiff that it was his understanding from someone connected with the appellant concern that Ferguson was to be paid as he claimed. Bourland denied having made the agreement himself and was not present when Watkins was supposed to have done so. Bourland's connection with the business was that he supervised the installation of various locker plants, for which he received twenty per cent of the net profit of each transaction as compensation.

At the time of trial of the cause, the whereabouts of Watkins was unknown, he having severed his connection with the company a year or two earlier. Poulos denied any knowledge of the alleged contract and denied that Ferguson had ever been employed on a commission basis in any capacity by the defendant corporation.

Appellant's main contention is that it was entitled to a directed verdict because the corporation was not in existence at the time the contract with Ferguson was alleged to have been made, and that even if such a contract had been made on behalf of the partnership, the appellant corporation would not be liable therefor.

Appellant concedes that the rule as to liability of corporations on contracts or obligations of a predecessor partnership is as stated in *Fletcher on Corporations,* § 4012:

"A corporation succeeding a partnership or association is liable on the contracts or obligations of the latter where it either assumes them under express agreement or where the facts and circumstances are such as to show an assumption.

". . . unless the corporation has expressly assumed the debts and obligations of its predecessor, its liability, if it exists at all, must arise by implication or

presumption, out of the facts and circumstances attending the incorporation, and the acquisition by the corporation of the assets and property of the firm or association, . . . The corporation, of course, would not be liable on the partnership obligations where no showing is made that it either expressly or impliedly assumed them.''

It is further said in § 4014 of the same work. ''It is quite generally recognized that a corporation may be held to have impliedly assumed the obligations of its predecessor, for an assumption of liability by the corporation, like any other fact, may be established by circumstantial evidence. Of course, the facts upon which the implication or presumption of liability is predicated must affirmatively appear from the pleadings and proof. The situation is analogous to that in which a new corporation, created to succeed to the assets and business of an old corporation, and which is simply a continuation of the old, becomes liable for its debts, and although more difficulty is encountered with the question of the assumption of liabilities when a corporation has succeeded to the business and assets of a partnership, it seems safe to say that the same rule prevails.''

Where the question was as to the liability of one corporation for the debts of another, in *Good* v. *Ferguson & Wheeler Land, Lumber & Handle Company,* 107 Ark. 118, 153 S. W. 1107, Ann. Cas. 1915A, 544, we held, to quote the headnote: ''One corporation may become liable for the debts of another when it has by reasonable implication assumed the payment of the liabilities of the debtor corporation, and it is a question for the jury to determine from the facts and circumstances whether they lead to the implication that when a new corporation takes over the property of an old one, it undertakes to discharge the latter's obligations.'' See, also, *Warmack* v. *Major Stave Company,* 132 Ark. 173, 200 S. W. 799; *Meeks* v. *Ark. Light & Power Company,* 147 Ark. 232, 227 S. W. 405.

Under the general rule as above-quoted and our holding in the *Good* case, *supra,* there was a question

made for the jury's determination whether the corporation had impliedly assumed the obligation to pay a commission to Ferguson. The two partners became the owners of 498 of the 500 shares of stock in the new corporation. They both were officers, and continued to conduct the same business. The corporation completed the sale of the locker units for which the negotiations had been begun by Ferguson, and received the profits from said sale.

Appellant was not entitled to a directed verdict, and since the instructions given by the court are not abstracted, we presume that this issue was submitted to the jury under proper instructions. *Sloan* v. *Ayres,* 209 Ark. 119, 189 S. W. 2d 653.

Appellant next urges that the trial court erred in not giving an instruction, the substance of which was that Ferguson could not recover if the jury found that he was acting as agent for both parties. The court below properly concluded that there was no evidence to warrant giving the requested instruction.

It is also urged that there was a fatal variance between the pleadings and the proof as to whether Bourland or Watkins made the contract to pay the commission alleged. The defendant did not plead surprise and ask for a continuance when this testimony was developed at the trial, and having chosen to speculate on the outcome of the jury's verdict without making such request, cannot now complain. See *National Cash Register Company* v. *Holt,* 193 Ark. 617, 101 S. W. 2d 441; *Stroud* v. *Henderson,* 171 Ark. 338, 284 S. W. 45.

The final point argued by appellant concerns the court's refusal to permit the defendant to introduce testimony as to whether the contract alleged was a reasonable or customary one in the business. To sustain its contention that such evidence was admissible, appellant relies on the recent case of *Shaver* v. *McKamey,* 216 Ark. 211, 224 S. W. 2d 819, in which we cited with approval the earlier case of *Greer* v. *Laws,* 56 Ark. 37, 18 S. W. 1038. Both cases involved a dispute as to the

amount of commission due for the sale of real estate. We held it competent to prove the customary charge by real estate men in similar transactions, as bearing upon the probable truth of what was alleged on either side as having been the agreement between the parties.

In the case at bar the dispute is over whether there was any agreement for a commission. The situation is not the same as in the cases cited, where both parties were agreed that some commission was due, but differed as to the amount they had agreed upon. While proof of customary commissions in a particular type of business transaction might bear upon the probable truth of the amount of commission alleged by either party as having been agreed upon, such testimony would have no bearing on the truth of the existence or nonexistence of any contract at all.

The judgment is affirmed.