OAK RIDGE MINERALS, INC., *v.* McKNIGHT.

4-9986                                    253 S. W. 2d 962

Opinion delivered January 12, 1953.

*Rex W. Perkins, Jeff Duty* and *E. J. Ball,* for appellant.

*Claude Duty, Lee Seamster* and *Lawrence S. Morgan,* for appellee.

ROBINSON, Justice. This is an appeal from a judgment in the sum of $12,951.25 for personal services rendered by appellee to appellant and O. B. Saner, its predecessor in the mining business. Saner lived at Kerrville, Texas, and had been engaged in the mining and oil business. In 1946 he called upon McKnight who lived at

Hot Springs. The two entered into an agreement, whereby McKnight would search for a suitable deposit of silica to be mined. It was further agreed between the parties that Saner would pay McKnight the sum of $37.50 per week, which the latter claims was a grubstake, merely enough to carry him along until such time as the silica could be located and developed. McKnight claims it was also agreed that, in the event of a discovery of a suitable deposit of silica, and that same was developed and put into production, he was to get fifteen per cent interest in the business as a consideration for his work in connection with the discovery and development of the silica deposit.

McKnight was unable to find a suitable deposit of silica in the vicinity of Hot Springs. He then made an additional agreement with Saner, whereby he would go to Rogers, where he had considerable mining experience, and attempt to locate a silica deposit in that vicinity, and if he was able to find one and develop it into the finished product, he was to get twenty-five per cent of the business, or was to be paid a reasonable sum for his services in connection with the discovery and development of the project. At this time the weekly allowance, or grubstake, was increased to $47.50.

McKnight located a satisfactory deposit of silica near Rogers and proceeded to supervise both the construction of mining facilities and the erection of a plant to process the material. Saner furnished the money for this development to the extent of about $150,000. Later Saner formed a corporation with all of the stock held by his family. Before the processing plant was completed to the point where it could be actually placed in operation, although the building had been constructed and quite a bit of machinery had been placed therein, Saner died, leaving the bulk of his estate to his widow.

Subsequent to the formation of the corporation, McKnight continued to work in connection with the silica operation and was paid the same amount he had received, namely $47.50 per week. No deductions were made for Social Security.

In the latter part of December, 1950, McKnight was in an automobile wreck and was seriously injured, losing a leg. While in the hospital, he was visited by the brother of Mrs. Saner, Mr. Randolph, who was looking after the business for her. Randolph delivered a check to McKnight, based on the weekly allowance he had been receiving, and told him that was the final payment. No effort was made to complete the processing plant; in fact, it has been sold.

McKnight filed this suit, asking for judgment in the sum of $20,000 as reasonable pay for his services in connection with the discovery of the silica deposit and building of the processing plant under the agreement with Saner. The court rendered judgment for McKnight in the sum of $20,000, less all the weekly allowances he had been paid, also minus the damage done to the company truck which was being driven by McKnight in December when he was injured. After making these deductions, the judgment in McKnight's favor amounts to $12,951.25.

The record is convincing that McKnight is telling the truth in regard to his oral agreement with Saner. There are many circumstances proved by the evidence that show McKnight was more than a $47.50 per week laborer. In fact, he is a successful, experienced mining engineer. He spent about five years locating and developing the deposit of silica and building the processing plant. During this time he spent for Saner, and Saner's corporation, the Oak Ridge Minerals, Incorporated, about $150,000. There is not one word, by insinuation or otherwise, that one dime of this money was wasted or misspent. There is some evidence in the record that on one occasion McKnight may have gotten drunk, but if this did happen, it was of no consequence since Saner continued to use his services on the same basis as in the past. After the corporation was formed, an attempt was made to borrow $120,000 from the R.F.C. In connection with the request for this loan, McKnight prepared an application consisting of about sixty-five pages. A part of that application is in the record and it shows, beyond any doubt, that McKnight was highly

skilled in the technicalities of the business in which he was engaged.

Undoubtedly, McKnight and Saner had some agreement, whereby McKnight was to receive compensation for his work, in addition to the weekly allowance made to him. It is not probable that Saner, a successful businessman, would have turned over to McKnight the management of a project the size here involved, with authority to spend $150,000 of his money, if McKnight was no more than a $47.50 a week laborer; and it is not likely that McKnight would have agreed to work merely for that small sum. The undisputed evidence in the case is that a reasonable salary for a man of McKnight's experience and ability is from $700 to $1,500 a month.

Appellants argue that even if there was a contract between Saner and McKnight, the corporation would not be liable to McKnight by reason of such contract. The corporation was brought into existence by Saner merely for the purpose of continuing the same business in which Saner was engaged. All stock was held by him, or issued to other members of his immediate family. There were no innocent purchasers of stock that would be injured by compelling the corporation to carry out contracts made by Saner in connection with the operation of the business. As some have expressed it, the corporation was Saner's "other pocket." Saner was solely responsible for the organization of the corporation and owned or controlled all the stock. Therefore, the corporation necessarily, as such, knew everything that Saner had done in connection with the business. In addition, the corporation continued to use McKnight's services, apparently on the same basis he had been working, in the same business before the corporation was formed.

In *Fort Smith Refrigeration & Equipment Co., Inc.,* v. *Ferguson,* 217 Ark. 457, 230 S. W. 2d 943, this court quoted, with approval, from Fletcher on Corporations, §§ 4012 and 4014 as follows: "A corporation succeeding a partnership or association is liable on the contracts or

obligations of the latter where it either assumes them under express agreement or where the facts and circumstances are such as to show an assumption. . . . It is quite generally recognized that a corporation may be held to have impliedly assumed the obligations of its predecessor, for an assumption of liability by the corporation, like any other fact, may be established by circumstantial evidence." See, also, *Baker* v. *Bellows*, 205 Ark. 448, 170 S. W. 2d 75.

Appellant further contends that if there was a contract, the terms of the agreement were that McKnight was only to receive additional compensation for the work that he had done in the event of actual finished production, and that here, since the plant was never completed, there was no finished production and, therefore, McKnight cannot recover. This argument might be sound if, through some fault or carelessness on the part of McKnight, there was no production; but such is not the case. The evidence clearly shows the only thing necessary to get finished production is completion of the installation of the machinery in the building, and that McKnight would have seen to such installation if he had been permitted to do so.

After a careful review of the entire record, we are of the opinion that the chancellor's decree is not contrary to a preponderance of the evidence.

Affirmed.

Justice McFADDIN not participating.