HYDE VENDING CO., Inc. *v.* WAYNE POULTRY CO.

5-5859                                   479 S.W. 2d 250

Opinion delivered April 24, 1972

*Williams & Gardner,* for appellant.

*James K. Young,* for appellee.

CARLETON HARRIS, Chief Justice. In February 1967, Hyde Vending Company, hereafter called Hyde, appellant herein, and Wayne Poultry Company, a Division

of Allied Mills, Inc., appellee herein, entered into a contract by which Hyde agreed to furnish vending machines for the dispensing of cold drinks, soup, pastries, gum, cigarettes, coffee, sandwiches, candy, chips, and other merchandise of a similar nature which might be desired and used by the employees of Wayne. Appellant agreed to purchase, install, service the machines, keeping them in good working order, and maintain the merchandise in good quality. Appellee agreed only to provide space within its plant of sufficient size to accommodate its employees, Wayne also agreeing to place any necessary tables and chairs within the space. Hyde agreed to pay to Wayne on the tenth day of each month 15% of the previous month's gross sales, except cold drinks, for which it would pay 25% of the gross sales. The contract was effective for a period of four years with the right on the part of the appellant to renew for an additional period of four years by first giving Wayne written notice of its intention to renew not less than sixty days prior to the end of the first four year period.[1] As to termination in event of a breach of the contract, the instrument provided that if Hyde failed to furnish quality merchandise at competitive prices, to maintain clean and sanitary conditions, or fail to perform any of the other obligations imposed on it, then Wayne, by giving fifteen days notice to Hyde to bring the performance up to the standards required, could, in the event of a failure to do so by appellant, terminate the contract by giving ninety days notice in writing of its intention to do so.

Under this agreement, the parties entered upon performance of their obligations and no complaints were lodged by either party until October of 1970, when Hyde was notified by the manager of Wayne that the machines were not being properly serviced and maintained. Specifically, it was asserted that the ice dispenser and the coke machine did not properly operate, the coffee machine was inoperative, the machines would frequently fail to dispense merchandise but would not return the coins, and some items of merchandise, principally pastries, were often stale. On January 22, 1971, Wayne notified

---

[1]Such a notice was timely given.

Hyde by letter that although some improvement had been made, the service still was not satisfactory and appellant should remove its machines by February 28. It was apparently decided that proper notice had not been given, and Hyde mailed another letter on March 29 advising that the time for removing the machines was being extended to April 30, 1971. In the meantime, just prior to the February expiration date, Hyde had instituted suit in the Yell County Chancery Court contending that it was not in violation of the terms of the agreement, and an injunction was sought restraining appellee from evicting appellant. After the granting of a temporary injunction, the matter was set for hearing on the question of whether a permanent injunction should be granted, and proceeded to trial for the taking of testimony. Subsequent to the conclusion of the evidence, the court rendered its opinion (August 1971) and found as follows:

"The evidence is conflicting as to whether Plaintiff has breached the contract by failing to properly service and maintain the machines, keep them clean and sanitary and furnish good quality merchandise. No doubt some of the machines did not operate properly from time to time. Likewise, on occasion stale pastries were being vended. However, the latter may well have been caused in hot weather by the fact that the lunchroom where the machines were located was not air conditioned. As to the former, it is within the common knowledge of everyone that anything mechanical often fails to operate as designed. Considering the evidence as a whole, including the interest or disinterest of the various witnesses, the court finds that a preponderance of the evidence shows that Plaintiff was not in violation of the agreement and that Plaintiff's employees exercised ordinary and reasonable care with respect to maintenance and servicing of the machines and the condition and quality of merchandise vended."

However, the court further stated:

"A decree of specific performance against Defendant would require the court to exercise continuing con-

trol until the expiration of the contract in 1975 and therefore such decree would not be capable of present performance by ordinary process of the court."

The court then cited cases to the effect that specific performance will not be decreed "where the order would not be capable of present performance by ordinary process of the court", and also cited cases to the effect that specific performance will not be decreed if there is an adequate remedy at law. Upon this basis, the court dissolved the temporary injunction and dismissed appellant's complaint for want of equity. From the decree dismissing the complaint, appellant brings this appeal.

Let is be said at the outset that we completely agree with the trial court's finding that the preponderance of the evidence established that Hyde was not in violation of the agreement, and that appellant's employees exercised ordinary and reasonable care with respect to maintenance and servicing of the machines and the condition and quality of merchandise vended. Since we agree that this finding was correct, there is no need to detail the evidence. The most impressive proof offered by either side came from two witnesses who might be termed disinterested. Dr. K. B. Middleton, a veterinarian employed by the United States Department of Agriculture and who was stationed at Wayne Poultry Company (being the inspector charged with the responsibility for the quality of products produced at that plant and the approval of the equipment), testified that he had never eaten doughnuts that were not edible, nor a bad candy bar, had never had difficulty with a cold drink machine, and that he had never heard employees say anything against the quality of the food. He stated that there had been some malfunction of the vending machines, but not often. This testimony was concurred in by Allison Farmer, a Federal Food Inspector employed by the Department of Agriculture, who was also assigned to the Wayne Poultry Processing Plant for a part of the time in question. With our finding that the court was correct in ruling that Hyde had not breached the contract, we are faced only with the question of whether appellant was entitled to the relief sought, i.e., a restraining order.

We do not think the cases relied upon by the court are controlling in the case before us.[2] Actually, in the instant litigation, we do not agree that appellant's complaint, even from a negative standpoint, constitutes a request for specific performance. From an affirmative standpoint, the complaint only asks that appellee be restrained from evicting or requiring appellant to move its vending machines located in the Wayne Poultry Processing Plant. The complaint does not ask that appellee be affirmatively required to do anything. The contract itself contains seven paragraphs relating to the duties of the parties under the agreement. Six of these paragraphs relate to duties imposed upon Hyde, the appellant, and only one imposes any duties upon appellee. This is item four which provides "Sponsor will provide space with its plants of sufficient size to accommodate its employees and if desirable tables and chairs for the convenience of employees". Proof upon the part of appellant reflected the figure of $63,627.10 as the gross income from the commencement of the contract to the date of trial, Mr. Hyde stating that he considered that 10% of the gross sales could be applied to the purchase price of the machines[3]; these cost $11,850.84. Mr. Hyde also testified that it was only very recently that the operation had "started picking up".

As previously pointed out, the court found that a decree of specific performance would require it to exercise continuing control until the expiration of the contract in 1975 and that the decree would accordingly not be capable of performance by ordinary process of the court. It has already been stated that we do not agree

---

[2] *Orr* v. *Orr*, 206 Ark. 844, 177 S.W. 2d 915; *McDaniel* v. *Orner*, 91 Ark. 171, 120 S.W. 829; *Hall* v. *Milham*, 225 Ark. 597, 284 S.W. 2d 108; *Leonard* v. *Board of Directors of Plum Bayou Levee District*, 79 Ark. 42, 94 S.W. 922, the first two relating to the fact that specific performance will not be decreed if there is an adequate remedy at law and the last two relating to the fact that specific performance will not be decreed where the order would not be capable of present performance by ordinary process of the court.

[3] It is not entirely clear whether this amount was to be applied to the purchase price of the machines or whether a portion was for maintanance or repair of the machines.

that this complaint sought specific performance, but even so, enforcement of the relief sought would not be difficult. This is not a case wherein the appellee is called upon to comply with various features of a complicated contract, for instance, to maintain a certain number of employees (in order to have a volume to make the business profitable); to the contrary, appellee is only required under the agreement to furnish space. This certainly would not call for constant supervision from the court for a violation could be punished by contempt proceedings. In *Montgomery County Canning Co.* v. *Bates*, 211 Ark. 930, 203 S.W. 2d 195, citizens of Montgomery County who were stockholders in the Montgomery County Canning Company instituted a suit in equity to enjoin appellants from dismantling or removing a canning plant from Montgomery County and asked specific performance of an agreement by the company to continue operation of a canning plant at Mt. Ida. The company filed a motion to dismiss the complaint, alleging that it sought specific performance of an executory contract, and that the chancery court was without jurisdiction; that the relief sought could not be compelled by the ordinary processes of the court. The trial court held with that contention but this court, discussing some of the cases relied upon by appellee in the case now before us disagreed, stating:

> "The rule announced in the *Leonard* case, *supra,* was reaffirmed in later decisions. *Caldwell* v. *Donaghey,* 108 Ark. 60, 156 S.W. 839, 45 L.R.A., N.S. 721, Ann. Cas. 1915 B, 133; *Nakdimen* v. *Atkinson Imp. Co.,* 149 Ark. 448, 233 S.W. 694. Under this rule appellants could not be required to continue operation of the canning plant at Mt. Ida by a decree of specific performance, but it does not necessarily follow that appellees would be thereby precluded from injunctive relief to restrain an attempted breach of the contract by the dismantling and removal of the plant. *Warmack* v. *Major Stave Co.,* 132 Ark. 173, 200 S.W. 799. A contract cannot be rescinded merely because it is of such a character that specific performance cannot be demanded. 17 C.J.S., Contracts, § 417. In 28 Am. Jur., Injunctions, p. 273, it is said: 'It was formerly thought that an injunction

would not be granted to restrain the breach of any contract, unless the contract was of a character that the court could specifically enforce. But the fair result of the authorities may be said to be that where the case is one in which the negative remedy by injunction will do substantial justice between the parties by compelling the defendant to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason or policy against it, the court will interfere to restrain conduct which is contrary to the contract, although it may be unable to enforce specific performance of it.' The case of *Pitcock v. State*, 91 Ark. 527, 121 S.W. 742, 134 Am. St. Rep. 88, is cited in support of the textwriter. If the complaint in the case at bar stated a good cause of action for injunctive relief, the chancellor erred in dismissing the suit even though the court was without jurisdiction to grant specific performance of the contract."

It would thus appear that the chancellor, in the instant litigation, was in error in denying the injunction because he felt that adequate relief could not be afforded. Be that as it may, we reiterate that specific performance was not prayed for in the complaint. That pleading avers that appellant has complied with its agreement, and only asks that appellee be restrained from evicting Hyde from the premises.

Nor do we agree that there was an adequate remedy at law. According to the evidence, these machines were purchased particularly for the Wayne plant. Though he operates in four other processing plants, machines are already in use in those locations according to Mr. Hyde and he stated that he had no other locations in which to place the Wayne machines. Of course, if evicted from the premises, Mr. Hyde still has his machines and he accordingly could not recover damages for them; still, they are of no immediate benefit to him. The witness said that the first several years under the contract were spent in developing this vending business into a profitable

operation, and he testified that the operation was just beginning, in January, 1971, to become profitable. It is argued by Hyde that the only way that appellant can recoup its investment and earn profits envisioned at the time the contract was entered into, is by fulfillment of the contractual agreement. One thing is definite, *viz,* any attempt at establishing damages would have to be speculative, for profits would depend upon a number of factors, for one, the number of people who would be employed at the plant for the next four years, which would certainly vary, depending upon the success of the enterprise, the amount of expenditure that would be necessary to keep the equipment in operating condition for the next several years, the prices that would be charged for the items, and competition from third parties who might locate near the plant. Numerous other situations or conditions could arise which would have a profound effect upon the making of a profit. Our feelings are expressed by the language appearing in *Montgomery County Canning Co.* v. *Bates, supra,* where this court, in disposing of the same argument, said:

> "It is true that equity will not restrain a breach of contract where the remedy at law is adequate and complete. *McDaniel* v. *Orner,* 91 Ark. 171, 120 S.W. 829. It appears from the complaint in the instant case that the parties affected by a breach of the contract are numerous so that redress at law would require a multiplicity of suits. It further appears that it would be difficult to accurately measure pecuniary damages that appellees might suffer as a result of the breach of the contract by appellants. * * * Under these circumstances, we are unwilling to say the remedy of law is adequate."

Summarizing, on the facts before us, there has been no breach of the contract by appellant, and appellee is not entitled to terminate the agreement. To the contrary, as found by the chancellor, the record supports appellant's position that it has discharged the obligations incumbent upon it. Appellant has not sought to require appellee to perform affirmative acts necessary to carry out the agreement; it has only said that it has not violated its obligation, and it only asks that appellee

be restrained from violating its obligation. It is entitled to that relief. Of course, we are only passing upon the record before us, and there is nothing to prevent appellee from invoking its right to cancellation if, in the future, appellant does not perform as required, and such fact is established.

It follows from what has been said that the decree should be reversed, and the cause remanded for the entry of a decree not inconsistent with this opinion.

It is so ordered.

GEORGE ROSE SMITH and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. This action by Hyde vending Co., Inc., against Wayne Poultry Co., is nothing more nor less than an action for specific performance of a contract for service. The Chancellor found as a matter of fact that the Hyde Vending Co., Inc., had an adequate remedy at law. I agree with the Chancellor. Furthermore, I cannot distinguish the specific performance here sought from that which was denied in *Paving Improvement Dist. No. 105 of Pine Bluff* v. *Wright,* 181 Ark. 919, 28 S.W. 2d 1062 (1930). In that case we said:

> ". . .This is a suit to compel specific performance of the contract employing appellee as engineer, and the remedy at law is complete and adequate, and for that reason a court of equity has no jurisdiction. . .".

By reversing the Chancellor here, we deny appellee its right to a jury trial upon the pivotal issue of breach or performance of the contract. While there is evidence in the record to support the Chancellor's finding that appellant did not breach its contract, I also find credible evidence in the record from which a jury could reach a different conclusion.

For the reasons stated, I respectfully dissent.

GEORGE ROSE SMITH and BYRD, JJ., dissent.